[Crim. No. 21024. Jan. 19, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
BILLY LEE CHADD, Defendant and Appellant.

**740**

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Supreme Court, Charles M. Sevilla, Chief Deputy State Public Defender, Elaine A. Alexander, Chief Assistant State Public Defender, Donald L. A. Kerson, Deputy State Public Defender, Harold F. Tyvoll and Charles R. Khoury for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield, Richard D. Garske and Patricia D. Benke, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MOSK, J.**—Defendant Billy Lee Chadd appeals from a judgment imposing a sentence of death following his plea of guilty to a charge of first degree murder. ■ As will appear, we hold that the trial court committed prejudicial error in accepting that plea without the consent of defendant's counsel as required by Penal Code section 1018. Because

of the limited nature of the issue, we need not recite the facts of the case in detail.

Defendant was arraigned on a complaint charging him, inter alia, with the first degree murder of Linda Hewitt (count 6), and alleging special circumstances making the crime a capital offense under the statutes then in effect. (Former Pen. Code, § 190 et seq., added by Stats. 1977, ch. 316, §§ 5-14, pp. 1256-1262.) Defendant entered a plea of not guilty through his appointed counsel, David R. Pitkin; the court denied bail, but set the case for bail review one week later. On that day, however, Mr. Pitkin appeared without his client and informed the court that defendant was in a hospital after attempting to commit suicide. Because it appeared to the court that defendant might be mentally disordered, the court directed that he undergo a 72-hour period of treatment and evaluation in a psychiatric facility. (Pen. Code, § 4011.6.)

Defendant thereafter waived the preliminary examination, and was arraigned on an information presenting essentially the same charges.[1] The prosecutor announced he would seek the death penalty on count 6. Mr. Pitkin informed the court that defendant wished to plead guilty against his advice, and that he would not consent to his client entering such a plea. As counsel observed, "This particular defendant's basic desire is to commit suicide, and he's asking for the cooperation of the State in that endeavor." The following colloquy then took place:

"THE COURT: Mr. Chadd, your counsel has indicated that you want to commit this suicide. You want to plead guilty and have the Court help you in doing that. What about that?

"THE DEFENDANT: Your Honor, it's true, I did attempt suicide. I have given serious consideration to the consequences of the trial, the

---

[1] The basic charges are as follows: Count 1: Murder of Patricia Franklin. Count 2: Rape of Patricia Franklin. Count 3: Sodomy of Patricia Franklin. Count 4: Robbery of Patricia Franklin. Count 5: Burglary of Patricia Franklin's house. Count 6: Murder of Linda Hewitt. Count 7: Rape of Linda Hewitt. Count 8: Sodomy of Linda Hewitt. Count 9: Oral copulation of Linda Hewitt. Count 10: Robbery of Linda Hewitt.

In addition, three special circumstances were alleged for the purpose of making the murder in count 6 a capital offense:

1. The murder was deliberate and premeditated, and was personally committed by defendant during the rape of Linda Hewitt (i.e., count 7).

2. The murder was deliberate and premeditated, and was personally committed by defendant during the robbery of Linda Hewitt (i.e., count 10).

3. The murder was personally committed by defendant, and he had previously murdered Patricia Franklin (i.e., count 1).

outcome, what it might be. I feel the death penalty would be, for all intents better for me.

"If the State of California can't, and I don't receive the death penalty, then I have got another shot in Nevada. They're going to try for the death penalty, too.[2] If that doesn't work out, then I will just have to do it myself."

In view of this attitude, the court declared a doubt as to defendant's sanity, suspended the criminal proceedings, and ordered defendant to undergo a further psychiatric examination. (Pen. Code, § 1368.)

The proceedings resumed after defendant was found mentally competent. Mr. Pitkin began by reiterating his firm objection to any plea of guilty by his client. He explained that according to his reading of Penal Code section 1018, "a guilty plea to a capital offense requires consent of counsel." And although he acknowledged that defendant was attempting to enter such a plea, he stated that "I want the record to reflect that it's without my consent."

The prosecutor apparently agreed with defense counsel's understanding of the law, and recommended on behalf of the People that the court "not accept a guilty plea from the defendant under these circumstances" but rather set the case for trial.

The court declined to follow this recommendation. It ruled, rather, that if it could find defendant sufficiently competent to act as his own attorney under the standards of *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], it would accept his guilty plea despite the refusal of his counsel of record to consent thereto. The court reasoned simply that such a finding would be "tantamount to" relieving Mr. Pitkin as counsel and permitting defendant to actually represent himself. The court thereupon questioned defendant, found him competent within the meaning of *Faretta*, and allowed him to plead guilty to all counts of the information and to admit all the charged enhancements and the special circumstances allegations. At no time, however, was Mr. Pitkin in fact relieved of his duties, and throughout the proceedings he continued to act as defendant's counsel of record.[3]

---

[2]It appears that defendant had also been charged with murder in Nevada.

[3]For example, even after finding defendant competent to represent himself under *Faretta*, the court began the hearing on the change of plea by asking defendant for the record, "Your counsel is Mr. Pitkin?" Defendant replied in the affirmative. During the

A jury was subsequently empanelled for the penalty phase of the trial, and fixed the punishment at death. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

Defendant first contends that the trial court had no authority to accept his guilty plea to a capital offense in the face of his counsel's express refusal to consent to the entry of such a plea. The point is well taken. Penal Code section 1018 provides in relevant part that no guilty plea to a felony punishable by death or life imprisonment without possibility of parole "shall be received from a defendant who does not appear with counsel, nor shall any such plea be received without the consent of the defendant's counsel." The record amply demonstrates that Mr. Pitkin did not give that consent. Under the terms of section 1018, therefore, the court erred in allowing defendant to plead guilty to count 6 of the information.

 In an effort to avoid this result, the Attorney General urges first that section 1018 can be "construed" to permit a capital defendant to discharge his attorney, represent himself, and enter a guilty plea. There are three answers to this contention. First, in the case at bar it is entirely hypothetical: although he well knew of his right to do so, defendant never made an unequivocal request to discharge Mr. Pitkin and represent himself, and hence was never granted that status; on the contrary, with defendant's agreement Mr. Pitkin continued to act as his counsel throughout the proceedings. (See fn. 3, *ante.*) We will not, of course, adjudicate hypothetical claims or render purely advisory opinions. (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 119-120 [145 Cal. Rptr. 674, 577 P.2d 1014], and cases cited.)

Second, it is difficult to conceive of a plainer statement of law than the rule of section 1018 that no guilty plea to a capital offense shall be received "without the consent of the defendant's counsel." It is settled that "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

---

remainder of the hearing the court several times referred to Mr. Pitkin as "your counsel." And when in conclusion the court reiterated its finding that defendant was competent to represent himself, the following exchange occurred:

"MR. PITKIN: Is the Court making—there has been no request that he represent himself.

"THE COURT: I know he hasn't, but I make that finding."

Third, even if section 1018 were subject to construction, the Attorney General's proposal would make a major portion of the statute redundant. He urges in effect that it be read to permit a capital defendant to discharge his attorney and plead guilty if he knowingly, voluntarily, and openly waives his right to counsel. But that is precisely what the third sentence of section 1018 expressly authorizes *noncapital* defendants to do.[4] The proposal would thus obliterate the Legislature's careful distinction between capital and noncapital cases, and render largely superfluous its special provision for the former. Such a construction would be manifestly improper. (*J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 36-37 [160 Cal.Rptr. 710, 603 P.2d 1306], and cases cited.)

 In the alternative, the Attorney General contends that if section 1018 cannot be so construed it is unconstitutional because it allows counsel to "veto" a capital defendant's decision to plead guilty. The argument, however, is both diffuse and obscure. The Attorney General appears to concede that in capital cases a state could constitutionally prohibit guilty pleas altogether and insist that the prosecution prove each such charge to the satisfaction of the trier of fact. But the state's power to prohibit guilty pleas, asserts the Attorney General, does not include the lesser power to condition such pleas on the consent of defense counsel. To do so, he claims, disturbs the "uniquely personal" nature of the defendant's decision to plead guilty, denies him his "fundamental right" to control the ultimate course of the prosecution, and destroys the constitutionally established relationship of counsel as the defendant's "assistant" rather than his master.

The contention fails to recognize the larger public interest at stake in pleas of guilty to capital offenses. It is true that in our system of justice the decision as to how to plead to a criminal charge is personal to the defendant: because the life, liberty or property at stake is his, so also is the choice of plea. (*In re Williams* (1969) 1 Cal.3d 168, 177, fn. 8 [81 Cal.Rptr. 784, 460 P.2d 984].) But it is no less true that the Legislature has the power to regulate, in the public interest, the manner

---

[4] The third sentence of section 1018 provides: "No plea of guilty of a felony for which the maximum punishment is *not* death or life imprisonment without the possibility of parole shall be accepted from any defendant who does not appear with counsel unless the court shall first fully inform him of his right to counsel and unless the court shall find that the defendant understands his right to counsel and freely waives it and then, only if the defendant has expressly stated in open court, to the court, that he does not wish to be represented by counsel." (Italics added.)

in which that choice is exercised. Thus it is the legislative prerogative to specify which pleas the defendant may elect to enter (Pen. Code, § 1016),[5] when he may do so (*id.*, § 1003), where and how he must plead (*id.*, § 1017), and what the effects are of making or not making certain pleas.[6]

■ A plea of guilty, of course, is the most serious step a defendant can take in a criminal prosecution. It operates first as a waiver of formal defects in the accusatory pleading that could be reached by demurrer. (*People* v. *Beesly* (1931) 119 Cal.App. 82, 87 [6 P.2d 114]; *In re Cook* (1910) 13 Cal.App. 399, 403 [110 P. 352].) Next, because there will be no trial the plea strips the defendant of such fundamental protections as the privilege against self-incrimination, the right to a jury, and the right of confrontation. (*Boykin* v. *Alabama* (1969) 395 U.S. 238, 243 [23 L.Ed.2d 274, 279, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122, 130-133 [81 Cal.Rptr. 577, 460 P.2d 449].) As to the merits, the plea is deemed to constitute a judicial admission of every element of the offense charged. (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].) Indeed, it serves as a stipulation that the People need introduce no proof whatever to support the accusation: the plea ipso facto supplies both evidence and verdict. (*People* v. *Jones* (1959) 52 Cal.2d 636, 651 [343 P.2d 577].) "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." (*Boykin* v. *Alabama, supra*, at p. 242 of 395 U.S. [23 L.Ed.2d at p. 279].) Finally, it severely restricts the defendant's right to appeal from the ensuing judgment. (*People* v. *DeVaughn, supra*, at pp. 895-896 of 18 Cal.3d.)

In view of these consequences, the Legislature has demonstrated an increasing concern to insure that no defendant enter a guilty plea in our

---

[5]In the original Penal Code of 1872 only three pleas were cognizable: guilty, not guilty, and former conviction or acquittal. In 1880 the Legislature added the plea of once in jeopardy. In 1927 the plea of not guilty by reason of insanity was incorporated into the statute. In 1963 the statute was again amended to provide for the plea of nolo contendere. And since 1955 the Legislature has permitted conditional pleas specifying the degree of the offense or the punishment to be imposed. (§ 1192.1 et seq.)

[6]Thus section 1016 declares that a defendant who pleads not guilty by reason of insanity without also pleading not guilty is presumed to admit the commission of the offense, and a defendant who does not plead not guilty by reason of insanity is presumed to have been sane at the time the offense was committed.

courts without fully understanding the nature and consequences of his act. To begin with, since its inception the law of California has required that each plea be entered by the defendant both personally and in open court. (Stats. 1851, ch. 29, § 301, p. 245; Pen. Code, § 1018.)

Over 30 years ago the Legislature deemed it necessary to impose special precautions against ill-advised guilty pleas, drawing a distinction according to the severity of the potential punishment. Thus it amended section 1018 to provide that (1) no guilty plea to a felony punishable by death or life imprisonment without possibility of parole shall be received from any defendant "who does not appear with counsel," and (2) no guilty plea to any other felony shall be accepted from such a defendant unless he has voluntarily, intelligently, and openly waived his right to counsel (see fn. 4, *ante*). (Stats. 1949, ch. 1310, § 1, p. 2298; Stats. 1951, ch. 858, § 1, p. 2369.)

Apparently impelled by two developments in the case law, the Legislature returned to the problem in 1973. In April of that year we decided *People* v. *Vaughn*, 9 Cal.3d 321 [107 Cal.Rptr. 318, 508 P.2d 318]. We there recognized that "In requiring a defendant who wishes to plead guilty to a capital offense to be represented by counsel, section 1018 is obviously designed to protect defendants by assuring that such a serious step is a fully informed and competent one, taken only after consideration with and advice by counsel." (*Id.* at p. 327.) On the facts of the case, nevertheless, we held that section 1018 as it then read did not bar the defendant from pleading guilty to a capital charge even though his counsel had expressly advised him against making such a plea. We reasoned in effect that although the statute insured that a capital defendant have the advice of an attorney (i.e., "appear with counsel") before pleading guilty, it did not also require him to follow that advice.

Several months later, however, the Legislature closed the statutory gap revealed in *Vaughn* by adding to section 1018 the further requirement that a court cannot accept a guilty plea to a capital charge "without the consent of the defendant's counsel." (Stats. 1973, ch. 719, § 11, p. 1301.) The effect of the amendment on the *Vaughn* rule is plain: we may safely assume it uncommon that an attorney who has advised a capital defendant against pleading guilty will consent to allow him to act contrary to that advice and to counsel's professional judgment as to his client's best interests. ■ It follows that since the

1973 amendment a capital defendant is no longer permitted to plead guilty in this state against the advice of his attorney.[7]

Nor was this amendment adopted as an isolated statute in the 1973 session. Rather, it was an integral part of the Legislature's extensive revision of the death penalty laws in response to the decision of the United States Supreme Court in *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 726]. (Stats. 1973, ch. 719, §§ 2-6, pp. 1297-1300.) That revision, of course, was an effort to eliminate the arbitrariness that *Furman* found inherent in the operation of prior death penalty legislation. (See *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101].) The fact that the requirement of counsel's consent to guilty pleas in capital cases was enacted as part of that statutory scheme demonstrates that the Legislature intended it to serve as a further independent safeguard against erroneous imposition of a death sentence.

Two years later the United States Supreme Court decided *Faretta*, holding that defendants in state criminal trials have a federal constitutional right of self-representation. But that decision did not strip our Legislature of the authority to condition guilty pleas in capital cases on the consent of defense counsel. Just as the *source* of the right of self-representation is not simply the fact that the defendant can waive counsel (422 U.S. at pp. 819-820, fn. 15 [45 L.Ed.2d at pp. 572-573]), so also the *scope* of the right of self-representation is not the mirror-image of the right to counsel. *Faretta* does not purport to guarantee a defendant acting in propria persona the right to do any and all things his attorney could have done: on the contrary, the high court recognized that "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." (*Id.* at p. 835 [45 L.Ed.2d at p. 581].)

---

[7]A dictum to the contrary in *People* v. *Teron* (1979) 23 Cal.3d 103, 115 [151 Cal.Rptr. 633, 588 P.2d 773], citing *Vaughn* for the proposition that a capital defendant "has the right to plead guilty, even against the advice of counsel," did not take into account this legislative development after *Vaughn* and is therefore disapproved.

The related holding of *Teron*—i.e., that a capital defendant representing himself under *Faretta* has no duty to "present a defense" but may simply "put the state to its proof"—remains valid. Such a defendant can presumably also take the stand and confess guilt. But neither of these possibilities resolves the issue at hand. First, as explained above, a guilty plea has more immediate and drastic consequences than even a judicial confession; second, and most importantly, the Legislature has spoken on the subject of guilty pleas.

The reach of *Faretta* is thus more modest. The court found self-representation to be an independent right implied by the structure and history of the Sixth Amendment. The opinion first categorizes the several pretrial and trial rights guaranteed by that amendment as "necessary to a full defense" (*id.* at p. 818 [45 L.Ed.2d at p. 572]), and observes that the amendment "constitutionalizes the right in an *adversary criminal trial* to *make a defense* as we know it." (*Ibid.*; italics added.) The opinion then reiterates (at p. 819 [45 L.Ed.2d at p. 572]) that the amendment grants to the accused personally "the right to make his defense," and concludes: "Although not stated in the Amendment in so many words, the right to self-representation—*to make one's own defense personally*—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences *if the defense fails.*" (Italics added; fn. omitted.) (*Id.* at pp. 819-820 [45 L.Ed.2d at pp. 572-573].)

The Attorney General in effect stands *Faretta* on its head: from the defendant's conceded right to "make a defense" in "an adversary criminal trial," the Attorney General attempts to infer a defendant's right to make *no* such defense and to have *no* such trial, even when his life is at stake. But in capital cases, as noted above, the state has a strong interest in reducing the risk of mistaken judgments. ▉ Nothing in *Faretta*, either expressly or impliedly, deprives the state of the right to conclude that the danger of erroneously imposing a death sentence outweighs the minor infringement of the right of self-representation resulting when defendant's right to plead guilty in capital cases is subjected to the requirement of his counsel's consent. It is significant that the Attorney General is unable to cite any authority, either federal or state, that holds to the contrary.[8]

The public interest at issue here has been promoted in related contexts. Before *Faretta*, the high court recognized that a state in its wisdom could constitutionally prohibit *all* guilty pleas to murder charges and insist that the prosecution prove each such case. (*North Carolina* v. *Alford* (1970) 400 U.S. 25, 38-39 [27 L.Ed.2d 162, 171-

---

[8]Even in noncapital cases the state has properly circumscribed the right to plead guilty in order to protect defendants against the consequences of their own folly or neglect. Thus even an undoubtedly intelligent and voluntary guilty plea made by a defendant represented by counsel cannot be accepted until the court has satisfied itself by an evidentiary hearing that "there is a factual basis for such plea." (Pen. Code, § 1192.5, 3d par.)

172, 91 S.Ct. 160].) There is not the slightest indication in *Faretta* that it is intended to abrogate that rule. Secondly, before *Faretta* this court squarely held that a capital defendant has no right to waive his automatic appeal: "It is manifest that the state in its solicitude for a defendant under sentence of death has not only invoked on his behalf a right to review the conviction by means of an automatic appeal but has also imposed a duty upon this court to make such review. We cannot avoid or abdicate this duty merely because defendant desires to waive the right provided for him. In other contexts it has been held that a defendant's waiver or attempted waiver of a right is ineffective where it would involve also the renunciation of a correlative duty imposed upon the court." (*People v. Stanworth* (1969) 71 Cal.2d 820, 833 [80 Cal. Rptr. 49, 457 P.2d 889]; accord, *People v. Teron* (1979) *supra*, 23 Cal. 3d 103, 115, fn. 7.)

Again, nothing in *Faretta* abrogates that rule. Indeed, only one year after *Faretta* the high court described automatic review of a judgment of death by the state supreme court as "an important additional safeguard against arbitrariness and caprice" (*Gregg v. Georgia* (1976) 428 U.S. 153, 198 [49 L.Ed.2d 859, 888, 96 S.Ct. 2909, 2971]; accord, *People v. Frierson* (1979) 25 Cal.3d 142, 181 [158 Cal.Rptr. 281, 599 P.2d 587]). In these circumstances *Faretta* does not grant a capital defendant the right to "defend" himself by discharging his counsel and waiving his automatic appeal. As we explained in *Stanworth* (at p. 834 of 71 Cal.2d), "It is not entirely 'his appeal,' since the state, too, has an indisputable interest in it which the appellant cannot extinguish."

The Ninth Circuit Court of Appeals has recently so held. In *Massie v. Sumner* (9th cir. 1980) 624 F.2d 72, cert. den. (Jan. 12, 1981) — U.S. — [66 L.Ed.2d 828, 101 S.Ct. 899], a defendant under a California sentence of death who had attempted unsuccessfully to waive his automatic appeal in this court sought federal habeas corpus on the ground, inter alia, that such a compulsory proceeding violates his right of self-representation under *Faretta*. Affirming a denial of relief, the circuit court reasoned: "While Massie is correct in that he enjoys a constitutional right to self-representation, *this right is limited* and a court may appoint counsel over an accused's objection in order to protect the public interest in the fairness and integrity of the proceedings. [Citation.]" (Italics added; *id.* at p. 74.) The court stressed that "a state may require reasonable proceedings in order to protect its own interests in the fairness of its determinations. In the same sense that a state may constitutionally require competency evaluations, a factual basis for a

guilty plea, and other routinely accepted proceedings, it may also require a higher court review of a death sentence and conviction." (*Ibid.*) The reason for this rule, said the court, is that "The state of California has a strong interest in the accuracy and fairness of all its criminal proceedings; this interest is most pronounced in a case such as this where a defendant pleaded guilty and was sentenced to death without the assistance of counsel." (*Ibid.*)

The state's interest is no less pronounced when, as in the case at bar, a defendant is permitted to plead guilty to a capital offense over the vehement objections of his attorney. And the requirement of counsel's consent to such a plea is surely one of the "reasonable proceedings" held permissible by the *Massie* court for the purpose of protecting that interest. As defense counsel suggests, it serves inter alia as a filter to separate capital cases in which the defendant might reasonably gain some benefit by a guilty plea from capital cases in which the defendant, as here, simply wants the state to help him commit suicide.[9]

Finally, the question now before us is not new to this court, but was answered in effect by our decision in *People v. Ballentine* (1952) 39 Cal.2d 193 [246 P.2d 35]. There a defendant charged with a capital murder appeared with counsel at his arraignment, and obtained a continuance. At the next hearing the defendant knowingly and voluntarily discharged his attorney and then entered a guilty plea. On his automatic appeal from an ensuing judgment of death, the defendant contended that section 1018 deprived the trial court of authority to receive his guilty plea to a capital crime while he was unrepresented by counsel. The Attorney General relied, as he does here, on the defendant's right of self-representation. Although *Faretta* had of course not been decided, a right of self-representation then deemed to be as broad as that recog-

---

[9]Similarly, in *Commonwealth v. McKenna* (1978) 476 Pa. 428 [383 A.2d 174], a defendant refused to challenge the constitutionality of the law under which he was sentenced to death, or to permit his counsel to do so. The Pennsylvania Supreme Court nevertheless held the law invalid under *Furman*, reasoning (at p. 181) that "while a defendant may normally make an informed and voluntary waiver of rights personal to himself, his freedom to do so must give way where a substantial public policy is involved; . . . It is evident from the record that Gerard McKenna personally prefers death to spending the remainder of his life in prison. While this may be a genuine conviction on his part, the waiver concept was never intended as a means of allowing a criminal defendant to choose his own sentence. *Especially is this so where, as here, to do so would result in state aided suicide.* The waiver rule cannot be exalted to a position so lofty as to require this court to blind itself to the real issue—the propriety of allowing the state to conduct an illegal execution of a citizen." (Italics added; fn. omitted.)

nized in *Faretta* was guaranteed in our courts by the former provisions of article I, section 13, of the California Constitution. The Attorney General argued that section 1018 should not be permitted to impair that constitutional right.

We rejected the Attorney General's argument, reasoning that section 1018 does not prevent a defendant from waiving counsel and defending himself; "It merely prohibits the court from receiving a plea of guilty to a felony for which the maximum punishment is death made by a defendant not represented by counsel." (39 Cal.2d at pp. 195-196.) We explained that although a defendant has a constitutional right to defend himself in person, "he is not guaranteed the right to plead guilty to a charge of a felony punishable with death.... The Legislature has deprived the court of the power to accept a guilty plea from a defendant charged with a felony punishable with death when he is not represented by counsel." (*Id.* at p. 196.) Declaring that section 1018 was "designed to protect adequately the rights of a defendant charged with a capital offense," we stressed that other states (e.g., New York, New Jersey) had enacted statutes that totally prohibited a capital defendant from pleading guilty under any circumstances. (*Ibid.*) We concluded that "Not having an absolute right to enter a plea of guilty, the defendant is not deprived of any right by being permitted to enter the plea only if he is represented by counsel." (*Id.* at pp. 196-197.)

We therefore reversed the judgment of death with directions to the trial court to "strike from its records Ballentine's plea of guilty to the charge of murder." (*Id.* at p. 197.) The decision was unanimous, and its holding has never been questioned. Nor can it fairly be distinguished on its facts: although the case was decided before the 1973 amendment to section 1018 adding the requirement that counsel consent to a guilty plea by a capital defendant, that requirement is couched in exactly the same mandatory language as the original requirement that such a defendant "appear with counsel." ▮ Indeed, because the consent requirement is even plainer than the latter, the holding of *Ballantine* applies a fortiori in the case at bar: here, too, "Not having an absolute right to enter a plea of guilty, the defendant is not deprived of any right by being permitted to enter the plea only if [his counsel consents]."

▮ We conclude that the trial court erred in accepting defendant's guilty plea to the charged capital offense without such consent. The error requires that the judgment be reversed insofar as it convicts

defendant of first degree murder on count 6 and finds true the special circumstances alleged in support of that count, and insofar as it imposes the penalty of death on the same count. Accordingly, we need not reach defendant's additional contentions relating to the voluntariness of his plea on count 6, the procedure leading to the special circumstances findings, and the penalty phase.

There remains one contention that defendant directs to all ten counts of the information, to wit, that his guilty plea to each count was invalid because the trial court assertedly did not advise him of his privilege against self-incrimination and obtain a waiver thereof before accepting such plea, as required by *Boykin v. Alabama* (1969) *supra*, 395 U.S. 238, 243 [23 L.Ed.2d 274, 279], and *In re Tahl* (1969) *supra*, 1 Cal.3d 122, 131-133. The claim is refuted by the record. We need not further lengthen this opinion by quoting verbatim the numerous and detailed recitals by the court and counsel of the constitutional rights that defendant would give up by pleading guilty, and defendant's express waivers of those rights. We have examined the relevant proceedings with care, and conclude that defendant was in fact advised of his privilege against self-incrimination and waived that privilege before his guilty plea to each count was accepted.

It does not follow, however, that the judgment should be affirmed as to all counts other than count 6. In *Ballantine* the defendant pleaded guilty not only to murder but also to one count of robbery, and the murder was found to be of the first degree because it was committed in perpetration of that robbery. After this court held the murder conviction invalid under section 1018, we addressed the robbery conviction. We reasoned that if that conviction were affirmed, it would be conclusive on retrial of the murder count and the prosecution would need only prove the fact of the killing in its perpetration in order to obtain a new conviction of first degree murder. In such circumstances, we concluded the conviction should also be reversed as to the robbery count. (39 Cal.2d at p. 197.)

The case at bar presents similar facts. As noted above (fn. 1, *ante*), proof of the special circumstances alleged in count 6 turns principally on proof that defendant committed each of the felonies charged against him in counts 1, 7, and 10. If his conviction on those counts is affirmed, it would be conclusive on retrial of count 6 and would eliminate most of the prosecution's burden to prove special circumstances

imposed by the Legislature. As in *Ballantine*, therefore, the judgment should also be reversed as to counts 1, 7, and 10.

Finally, defendant contends that the statute of limitations compels reversal of his conviction on counts 2, 3, 4, and 5 (see fn. 1, *ante*). The record demonstrates on its face that the contention is meritorious. The information alleges that each of the felonies charged in counts 2, 3, 4, and 5 was committed on or about July 26, 1974; but the information itself was not filed until January 25, 1979, i.e., four and one-half years later. Penal Code section 800 requires that an information charging such felonies be filed within three years after their commission.

■ The Attorney General responds that defendant should be deemed to have waived this defect because he failed to raise it either by demurrer or by motion in arrest of judgment. The argument is premised on Penal Code section 1012, which provides in effect that when a ground of demurrer "mentioned in Section 1004" appears on the face of the accusatory pleading it will be deemed waived unless the defendant raises it by demurrer or, if the ground is failure to state a public offense, by demurrer or motion in arrest of judgment. Section 1012 is not controlling in this context. It is true the courts have described as "failing to state a public offense" an accusatory pleading that shows on its face a violation of section 800. Nevertheless, the bar of the statute of limitations is not in fact "mentioned in Section 1004."[10] Thus while sections 1004 and 1012, insofar as relevant here, have remained essentially unchanged since 1872, the courts have not consulted them in resolving the question now before us.

That question, indeed, was not settled until 1934, when this court decided *People* v. *McGee*, 1 Cal.2d 611 [36 P.2d 378]. The court there observed (at p. 613) that "Whether the statute of limitations in criminal cases is jurisdictional, or a matter of defense to be affirmatively pleaded by the defendant, is a question upon which there exists some diversity of opinion.... [¶] It is necessary that this confusion be eliminated, and that the rule which shall govern prosecutions in this state be declared." The court then squarely held that "the more desirable rule is that the statute is jurisdictional," and drew the conclusion that "The point may

---

[10]The grounds of demurrer listed in that statute are lack of jurisdiction in the grand jury or the court, defects of form, more than one offense charged, failure to state a public offense, and legal justification or excuse.

therefore be raised at any time, before *or after* judgment." (Italics added; *ibid.*) The court recognized that a different rule governed civil actions, and explained: "In civil actions the statute is a privilege which may be waived by the party. In criminal cases, the state, through its legislature, has declared that it will not prosecute crimes after the period has run, and hence has limited *the power of the courts to proceed* in the matter." (Italics added; *ibid.*) The corollary was equally clear: "It follows that where the pleading of the state shows that the period of the statute of limitations has run, and nothing is alleged to take the case out of the statute, for example, that the defendant has been absent from the state, the power to proceed in the case is gone." (*Id.* at pp. 613-614.)

The decision was unanimous, and has been followed by this court without question for almost half a century. (See, e.g., *People v. Crosby* (1962) 58 Cal.2d 713, 722 [25 Cal.Rptr. 847, 375 P.2d 839]; *People v. Rehman* (1964) 62 Cal.2d 135, 139 [396 P.2d 913]; *In re Demillo* (1975) 14 Cal.3d 598, 601-602 [121 Cal.Rptr. 725, 535 P.2d 1181].) In a recent discussion of the matter we reiterated that in criminal cases "in California the statute of limitations constitutes a substantive rather than a procedural right which is not waived by failure to assert it at the pleading stage.... [I]t is now well settled that a conviction, even if based on a plea of guilty, is subject to collateral [or direct] attack if the charge was originally barred by the applicable limitation period," citing *Demillo* and *McGee*. (*People v. Zamora* (1976) 18 Cal.3d 538, 547 [134 Cal.Rptr. 784, 557 P.2d 75].) The rule is a reflection of the fundamental principle of our law that "the power of the courts to proceed"— i.e., their jurisdiction over the subject matter—cannot be conferred by the mere act of a litigant, whether it amount to consent, waiver, or estoppel (*Summers v. Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal. Rptr. 324, 347 P.2d 668]; *Sampsell v. Superior Court* (1948) 32 Cal. 2d 763, 773 [197 P.2d 739], and cases cited), and hence that the lack of such jurisdiction may be raised for the first time on appeal. (*Consolidated Theatres, Inc. v. Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 721 [73 Cal.Rptr. 213, 447 P.2d 325]; *Petty v. Manpower, Inc.* (1979) 94 Cal.App.3d 794, 798-799 [156 Cal.Rptr. 622].)

It is undisputed that in the information filed herein "nothing is alleged to take the case out of the statute." Under the rule of *McGee* and its progeny, accordingly, the judgment must be reversed as to counts 2, 3, 4, and 5.

■ There is no merit, however, in defendant's further contention that on remand these counts cannot be amended to allege facts tolling the statute (see Pen. Code, § 802). Our reversal of the judgment on these counts, of course, "remands the cause for new trial and places the parties in the trial court in the same position as if the cause had never been tried." (*People* v. *Murphy* (1963) 59 Cal.2d 818, 833 [31 Cal. Rptr. 306, 382 P.2d 346].) After entry of plea, an accusatory pleading may be amended with leave of court "for any defect or insufficiency, at any stage of the proceedings"—including, therefore, on remand after reversal—provided the amendment does not "change the offense charged" or otherwise prejudice the substantial rights of the defendant. (Pen. Code, § 1009.) An amendment adding allegations tolling the statute of limitations does not "change the offense charged" (*People* v. *Crosby* (1962) *supra*, 58 Cal.2d 713, 723); and there is neither claim nor showing that such an amendment would prejudice the substantial rights of this defendant, who has been aware of these charges at all times and indeed testified at length to the factual basis of each in pleading guilty thereto. It follows that on remand the prosecution will be entitled to seek leave to amend the information by adding appropriate allegations tolling the statute. (*People* v. *Rose* (1972) 28 Cal.App.3d 415, 418 [104 Cal.Rptr. 702]; accord, *People* v. *Morgan* (1977) 75 Cal.App.3d 32, 38 [141 Cal.Rptr. 863].)

## CONCLUSION

On counts 1, 6, 7, and 10 the judgment is reversed with directions to the trial court to strike from its records defendant's pleas of guilty and his admissions of charged enhancements and special circumstances allegations.

On counts 2, 3, 4, and 5 the judgment is reversed.

In all other respects the judgment is affirmed.

Tobriner, J., and Newman, J., concurred.

Bird, C. J., concurred in the judgment.

**BIRD, C. J.,** Concurring.—I join Justice Mosk's opinion only insofar as it resolves the issues of (1) the propriety of accepting appellant's guilty pleas to counts 1, 6, 7 and 10, and (2) the adequacy of appellant's waiv-

er of the privilege against self-incrimination. I also concur in the judgment of the court.

**RICHARDSON, J.,** Concurring and Dissenting.—I concur in the judgment to the extent that it reverses defendant's conviction of counts 2, 3, 4 and 5, because these counts were barred by the statute of limitations.

I respectfully dissent, however, from the reversal of counts 1, 6, 7 and 10. My disagreement with the majority, while simple, is very fundamental. In my view, the right to enter a particular plea in a criminal proceeding is that of the *defendant alone*. It cannot be subjected to the veto of defense counsel. It follows that section 1018 of the Penal Code is unconstitutional, because it unduly restricts the right of self-representation guaranteed by the Sixth Amendment of the United States Constitution. (See *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) Accordingly, the majority errs in reversing the judgment as to counts 1, 6, 7 and 10 on the ground that defendant's counsel refused to consent to defendant's plea of guilty as required by section 1018.

In *Faretta*, the United States Supreme Court held that the California courts improperly deprived the defendant of his constitutional right to conduct his own defense when they forced him, against his will, to accept a state-appointed public defender. As the high court stated, "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' [Citation.]" (422 U.S. at p. 834 [45 L.Ed.2d at p. 581], fn. omitted.)

"The right to defend is personal." These words hold the key to the issue before us. The majority attempts to distinguish *Faretta* on the basis that its rule and reasoning extends only to defendants who choose to represent themselves in the course of an adversary criminal trial, rather than to plead guilty before trial. (*Ante,* p. 751.) Such a distinction is much too narrow. The "right to defend" necessarily encompasses the initial, *and uniquely personal,* decision whether to mount a defense at the guilt phase. *Faretta* quoted with evident approval the following ex-

cerpt from *Carter* v. *Illinois* (1946) 329 U.S. 173, 174-175 [91 L.Ed. 172, 174, 67 S.Ct. 216], where a similar point was made: "Neither the historic conception of Due Process nor the vitality it derives from progressive standards of justice denies a person the right to defend himself *or to confess guilt.* Under appropriate circumstances the Constitution requires that counsel be tendered; it does not require that under all circumstances counsel be forced upon a defendant." (Italics added.) Indeed, the majority herein acknowledges that the self-represented defendant "under *Faretta* has no duty to 'present a defense' but may simply 'put the state to its proof' . . . . Such a defendant can presumably also take the stand *and confess guilt.*" (*Ante,* p. 750, fn. 7, italics added.)

If the right to "take the stand and confess guilt" is constitutionally protected by *Faretta* from state interference, then surely the comparable right to appear at the arraignment and plead guilty is likewise so protected, for in both cases the defendant makes the personal, fundamental decision, which is his alone to make, to acknowledge his guilt of a criminal offense. Whatever the reason which impelled that critical choice, the Constitution assures that it belongs to the defendant, and to no one else. Prior California authorities have consistently supported this proposition. (See *People* v. *Vaughn* (1973) 9 Cal.3d 321, 328 [107 Cal.Rptr. 318, 508 P.2d 318]; *In re Williams* (1969) 1 Cal.3d 168, 177, fn. 8 [81 Cal.Rptr. 784, 460 P.2d 984]; *In re Beaty* (1966) 64 Cal.2d 760, 765 [51 Cal.Rptr. 521, 414 P.2d 817]; *In re Rose* (1965) 62 Cal.2d 384, 390 [42 Cal.Rptr. 236, 398 P.2d 428].) Our most recent expression was in *People* v. *Teron* (1979) 23 Cal.3d 103, 115 [151 Cal.Rptr. 633, 588 P.2d 773], wherein, speaking through Justice Tobriner, we said, "Defendant, however, bears no duty to present a defense. *He has the right to plead guilty, even against the advice of counsel.*" (Italics added.)

This fundamental principle is not only consistent with prior California law, it is supported by sound and careful reasoning with nationwide acceptance. Thus, the American Bar Association, which has adopted certain standards for the administration of criminal justice, includes one which is fully applicable here. Standard 5.2 of the Standards Relating to the Defense Function, entitled "Control and Direction of the Case," provides in pertinent part that "(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made *by the accused* after full consultation with counsel are: (i) *what plea to enter;*

(ii) whether to waive jury trial; (iii) whether to testify in his own behalf." (Italics added.) The commentary to standard 5.2 explains that "The history of the criminal process in our system and the rights vested in an accused under the Constitution mark out certain basic decisions as belonging to the client; . . . The requirement that the defendant personally enter a guilty plea and that it be voluntary and informed carries the implication that *it is the defendant who must make the choice. . . .* Although counsel should not demand that his own view of the desirable course be followed, he is free to engage in fair persuasion and to urge his considered professional opinion on his client. *Ultimately, however, because of the fundamental nature of these three decisions, crucial in such basic matters governing his own fate, the decisions on these matters belong to the accused.*" (Pp. 238-239, italics added.)

It should be noted that the foregoing standard and its accompanying commentary recognize both the personal, fundamental nature of the decision to plead guilty and its close equivalence to the decision to testify at trial. Contrary to the majority's analysis, *both* rights are constitutionally protected by self-representation principles.

The uniquely personal nature of the decision whether or not to plead guilty is readily demonstrated by reviewing some of the legitimate and compelling reasons which might motivate such a plea. The defendant might enter a guilty plea to (1) relieve his conscience through confession and atonement, (2) gain some tactical advantage, including a less severe penalty, (3) avoid the "agony and expense" of an unnecessary and prolonged trial, where the evidence of guilt is overwhelming (see *Brady* v. *United States* (1970) 397 U.S. 742, 750 [25 L.Ed.2d 747, 757, 90 S.Ct. 1463]), or (4) spare friends and relatives the spectacle and embarrassment, and perhaps publicity, of a public trial (see *United States* v. *Jackson* (1968) 390 U.S. 570, 584 [20 L.Ed.2d 138, 148, 88 S.Ct. 1209]). If he chooses to do so, intelligently and voluntarily, the defendant should have the right to accomplish these ends by pleading guilty. Under the majority's holding, however, state-appointed counsel can defeat these purposes with impunity by simply declining to consent to the plea. To me it makes no sense to say that a criminal defendant has a constitutional right to take the stand during his trial and freely admit his guilt but if defendant wishes to spare himself the ordeal and embarrassment of trial by pleading guilty before trial his lawyer can prevent his doing so, and this even though he cannot be compelled to accept a lawyer. The majority hold, in short, that defendant may assert his con-

stitutional right to acknowledge his guilt, but only on the condition that he submit to the ordeal of a trial. This result is exceedingly strange, illogical, and inconsistent, particularly so because counsel's motives in refusing to give his consent may be varied. (See *People* v. *Corona* (1978) 80 Cal.App.3d 684, 702-704 [145 Cal.Rptr. 894].)

As stated by Justice Frankfurter in *Adams* v. *U.S.* ex rel. *McCann* (1942) 317 U.S. 269, 276-277 [87 L.Ed.2d 268, 273-274, 63 S.Ct. 236, 143 A.L.R. 435], "It hardly occurred to the framers of the original Constitution and of the Bill of Rights that an accused, acting in obedience to the dictates of self-interest or the promptings of conscience, should be prevented from surrendering his liberty by admitting his guilt. The Constitution does not compel an accused who admits his guilt to stand trial against his own wishes. . . .*And not even now is it suggested that a layman cannot plead guilty unless he has the opinion of a lawyer on the questions of law that might arise if he did not admit his guilt.* Plainly, the engrafting of such a requirement upon the Constitution would be a gratuitous dislocation of the processes of justice." (Italics added.)

In my opinion the state can assert no interest sufficiently compelling to override defendant's constitutionally protected freedom of choice in the matter of his own plea, so long as that plea is voluntarily and knowingly made, and has a sufficient factual basis (see Pen. Code, § 1192.5). To the contrary, given the overwhelming burdens on our crowded courtrooms, attributable in substantial part to the trial and retrial of numerous capital cases, the public interest is not served by refusing to accept such pleas if properly made. The majority characterizes defendant's plea as motivated by a desire to "commit suicide." This rhetoric disregards the record which demonstrates that his competency to enter a voluntary and knowing plea was firmly established in several thorough psychiatric examinations and competency hearings.

In conclusion, I return to the high court's language in *Faretta*, where the rationale underlying the whole principle of self-representation is aptly expressed: "The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a

case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists." (P. 820 [45 L.Ed.2d p. 573], fn. omitted.)

I would affirm the judgment of conviction as to counts 1, 6, 7 and 10.

Clark, J., concurred.

The petitions of both parties for a rehearing were denied March 2, 1981. Clark, J., and Richardson, J., were of the opinion that the respondent's petition should be granted.