[Civ. No. 25062. Third Dist., Jan. 21, 1987.]

In re JUSTIN L., a Minor
SACRAMENTO COUNTY DEPARTMENT OF SOCIAL WELFARE,
Petitioner and Respondent, v.
SHARON L., Objector and Appellant.

COUNSEL

R. Bruce Finch for Objector and Appellant.

L. B. Elam, County Counsel, and Ryan M. Polstra for Petitioner and Respondent.

OPINION

DAVIS, J.*—In this case we determine that appellant Sharon L. was denied her statutory right to discharge counsel and represent herself in an action to terminate her parental rights pursuant to Civil Code section 232. The trial court failed to determine whether she was capable of knowingly and intelligently waiving her right to counsel. However, we hold that under the circumstances of this case, any such error is harmless; as a result, we shall affirm the judgment.

*Assigned by the Chairperson of the Judicial Council.

The factual background to this appeal is uncomplicated. On October 27, 1983, the Sacramento County Department of Social Welfare filed a petition in the superior court to have Justin L., Sharon's son, declared forever free from her custody and control. The petition alleged that Justin had been a dependent child of the juvenile court since June, 1980. Termination was sought on several grounds.

On January 9, 1984, a pretrial hearing was conducted at which counsel was appointed for Sharon. Counsel continued to represent her in succeeding hearings. On April 4, 1984, the county filed with the court notice that trial would commence on August 28, 1984. This notice was served on Sharon through her counsel.

In January, 1984, David Krebs, Ph.D., and Doral Leek, Ph.D., had been appointed to examine appellant and submit evaluations, and to act as expert witnesses on behalf of the county. They were asked to determine whether Sharon was and would remain incapable of properly caring for the minor because of mental deficiency or illness, and whether that condition would make detrimental Justin's return to her.

Dr. Leek concluded that Sharon has an emotional disorder, i.e., chronic schizophrenia with prominent delusional features. Because of that condition, Dr. Leek asserted Sharon would be unable to provide a home or care or control for Justin, and his return to her care would be detrimental to him. During this interview, appellant explained she had been "annointed" a "priestess" and was an ordained minister, working in an underground religious organization to protect the citizenry from the police and from Children's Protective Services. Dr. Leek found Sharon occasionally "would laugh vigorously and at length without apparent environmental stimuli." She believed the county had conspired with her ex-sister-in-law to steal her child.

Dr. Krebs interviewed appellant as well. During the course of the session, appellant explained that Justin was taken from her after she called police to report that people were "screaming things at her about how they were going to kill and rape her son." She felt that the police wanted to steal the boy to sell him on the black market. She felt mistreated by the welfare department and thought they were trying to "overthrow" her. She stated her intention was to prove what the county was doing and said she was a "Protective Services Minister, working under God and that her task currently was to prosecute the Police and Welfare for their child stealing bunko operation." Dr. Krebs concluded appellant was a chronic schizophrenic with an extremely small chance of improvement. He noted she "continues to display pathology that makes it impossible for her to maintain a parental role for her son. Her delusional system precludes her being able to recognize that

she is a person who needs psychological help. People with this personality pattern have been known to become violent towards those 'others' they hold responsible for their 'plights' in life. With her potential for distortion, her child could be the target of her anger."

On May 25, 1984, the court appointed Howard Budwin, Ph.D., at appellant's counsel's request, to examine Sharon and prepare an evaluation, and to act as an expert witness on her behalf. Ultimately, no such report was entered into evidence on appellant's behalf at trial, nor did the doctor testify.

On August 1, 1984, Sharon filed with the court a document entitled "Discharge of Attorney and Substitution of Party In Propria Persona." The form, signed by Sharon and her appointed counsel, indicated she sought to substitute herself for counsel and reflected counsel's consent. There is no evidence in the record to show the document was ever served on the county.

At the start of trial on August 28, 1984, the court first took up the matter of Sharon's attempt to discharge her attorney. The entire colloquy lasted less than a minute.[1] At the conclusion of the discussion, the court denied the request and commenced trial. Sharon's attorney stipulated to the admission of the reports from Drs. Leek and Krebs. Counsel advised Sharon against taking the stand and rested without presenting any evidence. On February 14, 1985, the court filed its judgment terminating Sharon's parental rights pursuant to Civil Code section 232, subdivisions (a)(6) and (a)(7). Sharon timely appealed from this judgment.

DISCUSSION

Sharon argues she was denied the right to represent herself in the action brought to terminate her parental rights. ██ In *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], the United States Supreme Court held that a criminal defendant has the right to represent himself whenever he knowingly and intelligently waives the right to be represented by counsel. (*Id.,* at p. 835 [45 L.Ed.2d at p. 581].) The court reviewed the historical underpinnings of the Sixth Amendment and concluded that the rights there guaranteed flow to the defendant personally. While the defendant has the right to be represented by counsel should he so choose, the state

---

[1]The exchange between the judge and appellant was as follows: "THE COURT: Maybe I ought to take up a matter first. There has been presented to me a document entitled Discharge of Attorney, and you're Mrs. L[.]? [¶] THE RESPONDENT: Yes. [¶] THE COURT: Unfortunately, under the law, you can't discharge your attorney, so you are stuck with him. [¶] THE RESPONDENT: Why is that? [¶] THE COURT: Well, because the law provides that you have to be appointed an attorney, the code section provides that, and that's what's happened in this case, so that's why you have an attorney, and he'll have to stay as your attorney. [¶] THE RESPONDENT: I see."

has no interest in forcing unwanted representation upon an unwilling defendant. (*Id.,* at pp. 818-834 [45 L.Ed.2d at pp. 572-581].) It is virtually irrefutable that a person charged with a crime would be better able to defend himself in our adversarial system with the guidance of counsel. But "[p]ersonal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' [Citation.]" (*Id.,* at p. 834 [45 L.Ed.2d at p. 581].)

■ There is no federal constitutional right per se to be represented by counsel in all parental termination proceedings. (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 31-34 [68 L.Ed.2d 640, 652-654, 101 S.Ct. 2153]; see *In re Christina P.* (1985) 175 Cal.App.3d 115, 128-129 [220 Cal.Rptr. 525].) The existence of a federal right to counsel is a matter for case by case adjudication (see *ibid.*). Here no claim of federal constitutional right was tendered in the trial court. In view of this consideration and the bleakness of appellant's prospects (addressed more fully in our discussion of harmless error, *post*), we conclude there is no federal constitutional right to counsel in this case.

In view of the nature of the federal right it is not surprising that we have found no case holding the right to waive counsel in an action brought to terminate parental rights is of constitutional dimension. Indeed under our state Constitution, there is no right to waive counsel in a criminal case. (See *People* v. *Sharp* (1972) 7 Cal.3d 448 [103 Cal.Rptr. 233, 499 P.2d 489]; *People* v. *McDaniel* (1976) 16 Cal.3d 156 [127 Cal.Rptr. 467, 545 P.2d 843].) ■ However, our legislature has made such a right available by statute in parental termination cases. (Civ. Code, § 237.5.)[2] As relevant to this

---

[2]Civil Code section 237.5 provides: "At the beginning of the proceeding on a petition filed pursuant to this chapter counsel shall be appointed as follows:

"(a) The court shall consider whether the interests of the minor require the appointment of counsel. If the court finds that the interests of the minor do require such protection, the court shall appoint counsel to represent the minor. If the court finds that the interests of the minor require the representation of counsel, counsel shall be appointed whether or not the minor is able to afford counsel. The minor shall not be present in court unless the minor so requests or the court so orders.

"(b) If a parent appears without counsel and is unable to afford counsel, the court shall appoint counsel for the parent, *unless such representation is knowingly and intelligently waived.* The same counsel shall not be appointed to represent both the minor and his or her parent.

"(c) The public defender or private counsel may be appointed as counsel pursuant to this section. Private counsel appointed under the provisions of this section shall receive a reason-

appeal, section 237.5 provides that when a parent appears without counsel and is unable to afford counsel, the court shall appoint an attorney to represent him or her, unless the parent knowingly and intelligently waives representation. (*Id.,* subd. (b).)

The county claims the waiver provision is inapplicable to the present situation where appellant's rights were sought to be terminated under Civil Code section 232, subdivision (a)(6).[3] The pertinent portion of subdivision (a)(6) provides that "[i]f the rights of any parent are sought to be terminated pursuant to this subdivision, and the parent has no attorney, the court shall appoint an attorney for the parent *pursuant to Section 237.5,* whether or not a request for the appointment is made by the parent." (*Ibid.,* italics added.) Thus, subdivision (a)(6) explicitly references section 237.5, which mandates appointment of counsel unless the parent waives such representation.

Notwithstanding the express language of the statute, the county claims section 232, subdivision (a)(6) requires the appointment of an attorney without giving the parent the chance to waive that right. The county argues

able sum for compensation and expenses, the amount of which shall be determined by the court. Such amount shall be paid by the real parties in interest, other than the minor, in such proportions as the court deems just. However, if the court finds that any of the real parties in interest are unable to afford counsel, the amount shall be paid out of the general fund of the county.

"(d) The court may continue the proceeding for not to exceed 30 days as necessary to appoint counsel, and to enable counsel to become acquainted with the case." (Italics added.)

[3]Civil Code section 232 provides in pertinent part: "(a) An action may be brought for the purpose of having any child under the age of 18 years declared free from the custody and control of either or both of his or her parents when the child comes within any of the following descriptions:

". . . . . . . . . . . . . . . . .

"(6) Whose parent or parents are mentally disabled and are likely to remain so in the foreseeable future. As used in this subdivision, 'mentally disabled' means that a parent or parents suffer any mental incapacity or disorder which renders the parent or parents unable to adequately care for and control the child. The evidence of any two experts, each of whom shall be either a physician and surgeon, certified either by the American Board of Psychiatry and Neurology or under Section 6750 of the Welfare and Institutions Code, or a licensed psychologist who has a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders, shall be required to support a finding under this subdivision. If, however, the parent or parents reside in another state or in a foreign country, the evidence required by this subdivision may be supplied by the affidavits of two experts, each of whom shall be either a physician and surgeon who is a resident of that state or foreign country, and who has been certified by a medical organization or society of that state or foreign country to practice psychiatric or neurological medicine, or by a licensed psychologist who has a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders and who is licensed in that state or authorized to practice in that country. *If the rights of any parent are sought to be terminated pursuant to this subdivision, and the parent has no attorney, the court shall appoint an attorney for the parent pursuant to Section 237.5, whether or not a request for the appointment is made by the parent.*" (Italics added.)

that since section 237.5 applies to *any* petition brought under section 232, the Legislature must have meant to indicate something different when it amended subdivision (a)(6) in 1983 to read in its present form. We find this argument without merit. Former subdivision (a)(6), as it existed in 1983, provided that "the court shall appoint an attorney or attorneys to represent the parent or parents and fix the compensation to be paid by the county for such services, if the court determines the parent or parents are not financially able to employ counsel." The Legislature amended that subdivision as of 1984 to read as it currently does: "If the rights of any parent are sought to be terminated pursuant to this subdivision, and the parent has no attorney, the court shall appoint an attorney for the parent pursuant to Section 237.5, whether or not a request for the appointment is made by the parent." The former version of subdivision (a)(6) mandated appointment of counsel for the indigent parent without any provision for waiver. Thus, when the Legislature amended that subdivision to refer to section 237.5, it intended to permit the indigent parent to waive the right to counsel. At first glance, the reference to section 237.5 appears to be surplusage, since section 237.5 applies to section 232 in its entirety. (Civ. Code, § 237.5.) But in view of the previous mandate of section 232, subdivision (a)(6), that counsel shall be appointed without any provision for waiver, the Legislature obviously felt the need when it amended subdivision (a)(6) to emphasize the right of the parent to waive counsel if he or she wished.

The county contends that public policy militates against allowing a parent whose rights are adjudicated under subdivision (a)(6) to waive the assistance of counsel. The county argues the right to dispense with counsel and proceed pro se has been found inapplicable where a defendant wishes to abandon his automatic appeal following a sentence of death (*Massie* v. *Sumner* (9th Cir. 1980) 624 F.2d 72, cert. den. 449 U.S. 1103 [66 L.Ed.2d 828, 101 S.Ct. 899]) and where a defendant seeks to plead guilty to first degree murder over the objections of counsel. (*People* v. *Chadd* (1981) 28 Cal.3d 739.) ▪ Neither *Massie* nor *Chadd* is apposite in this instance because both involved capital cases, in which the state has a special interest in ensuring the fairness of the proceedings. (*Massie* v. *Sumner, supra,* 624 F.2d at p. 74.) "[I]n capital cases, . . . the state has a strong interest in reducing the risk of mistaken judgments. Nothing in *Faretta,* either expressly or impliedly, deprives the state of the right to conclude that the danger of erroneously imposing a death sentence outweighs the minor infringement of the right of self-representation resulting when defendant's right to plead guilty in capital cases is subjected to the requirement of his counsel's consent." (*Chadd, supra,* 28 Cal.3d at p. 751.) The death penalty cases are thus inapplicable because the punishment, if implemented, is irrevocable, and the state has a strong interest in ensuring accuracy and fairness in that determination. No noncapital cases hold the right to self-representation unavailable as a matter of law, for the simple reason that the same concerns are not present in other cases.

 The county also argues that adjudications under subdivision (a)(6) conflict with the right of self-representation. The county argues the inquiry the court must conduct to determine whether the waiver is knowing and intelligent might prejudice the court on the main issue before it (whether parental rights should be terminated on grounds of mental disability), and thus such a right is unavailable. But the inquiry whether a waiver of counsel is knowing and intelligent is more limited than determining whether the parent suffers from a mental disability that impairs his or her ability to raise children. Subdivision (a)(6) defines mental disability to mean "that a parent or parents suffer any mental incapacity or disorder which renders the parent or parents unable to adequately care for and control the child." On the other hand, the only issue in determining whether there has been a knowing and intelligent waiver of counsel is whether the appellant has the mental capacity to forego the right to counsel with an understanding of the probable risks and consequences of such a choice. (*People* v. *Zatko* (1978) 80 Cal.App.3d 534, 544 [145 Cal.Rptr. 643]; *Curry* v. *Superior Court* (1977) 75 Cal.App.3d 221, 226 [141 Cal.Rptr. 884].) Whether a person has a sufficient understanding of the potential drawbacks of self-representation and of the nature of the proceedings is a far less searching question then whether their parental rights should be terminated because of a mental disability, an issue that requires the assent of two licensed medical doctors or psychologists. (Civ. Code, § 232, subd. (a)(6); see generally *People* v. *Powell* (1986) 180 Cal.App.3d 469, 475-481 [225 Cal.Rptr. 703]; *People* v. *Wolozon* (1982) 138 Cal.App.3d 456, 460-462 [188 Cal.Rptr. 35].) We thus find the county's public policy arguments unpersuasive.

 Anticipating our rejection of their arguments concerning statutory interpretation and public policy, the county next argues that Sharon never exercised her right to self-representation. The county contends the document filed by appellant, entitled "Discharge of Attorney and Substitution of Party in Propria Persona" was insufficient to apprise the court of her intention to represent herself. The form was filed with the court August 1, 1984, 27 days before trial. It was not served on the county and no proof of service appears in the record. The county further argues that appellant failed to argue on her own behalf when the court raised the issue and thus she did not give a timely and unequivocal waiver. Under the circumstances, this argument is unavailing. The court was sufficiently advised that appellant wished to represent herself. The county was not prejudiced by lack of notice of the motion for the simple reason that it could have had no role in such a motion. A timely request for self-representation which displays a knowing and intelligent waiver of the right to counsel *must* be granted, irrespective of whether the county agrees or not. (See *People* v. *Joseph* (1983) 34 Cal.3d 936, 943 [196 Cal.Rptr. 339, 671 P.2d 843].) A motion for self-representation made on the first day of trial and unaccompanied by a request for a continuance

is timely. (*People* v. *Tyner* (1977) 76 Cal.App.3d 352, 355 [143 Cal.Rptr. 52]; see also *People* v. *Windham* (1977) 19 Cal.3d 121, 128, fn. 5 [137 Cal.Rptr. 8, 560 P.2d 1187].) No request for a continuance was made here. Because there is no opportunity for the county to argue against such a motion where it is timely, it cannot be prejudiced by a lack of notice.

The county also contends the request was equivocal because Sharon merely acquiesced when the court informed her she was required to have counsel. However, it is clear the trial judge prevented any chance for her to argue on her own behalf by cutting the issue short. He told her the option to represent herself was unavailable by statute. One untutored in the law and its procedures and faced with the harsh prospect of having her child taken away forever is in no position to begin arguing with the person who determines whether her parental rights shall be terminated. We hold that the document filed by appellant was timely and sufficient to apprise the court of her desire to proceed on her own behalf. Any failure on her part to argue more vociferously is attributable to the court's failure to understand her right to represent herself, as codified in section 237.5. Under these circumstances, we find the court erred when it failed to determine whether appellant was capable of giving a knowing and intelligent waiver of her right to counsel.

Having determined the court erred when it deprived Sharon of her statutory right to waive counsel, we must now examine whether that error in this context requires reversal.

■ It is now settled that in a criminal trial the erroneous denial of a timely asserted request for self-representation is reversible per se. (*People* v. *Joseph, supra,* 34 Cal.3d 936.) *Joseph* construed the right recognized in *Faretta,* the constitutional right to waive counsel guaranteed by the Sixth Amendment and applied to the states by Fourteenth Amendment. However, in *People* v. *Sharp, supra,* 7 Cal.3d 448, our Supreme Court proclaimed that the California Constitution offers no independent right to waive counsel. (*Id.,* at p. 459; see also *People* v. *McDaniel, supra,* 16 Cal.3d at p. 167.) ■ In *Sharp,* the court held that error in denying a nonconstitutional right of self-representation should be analyzed under ordinary principles of harmless error. (*Sharp, supra,* 7 Cal.3d at pp. 461-463; *People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].) Since the right of self-representation is not grounded in the Sixth Amendment, we are bound by our Supreme Court's determination that harmless error analysis is appropriate. (*Sharp, supra,* 7 Cal.3d at pp. 461-463.) Because that principle has not been expressly rejected, we must adhere to it. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

When we analyze the case before us, we conclude a more favorable result absent the error is not reasonably probable. The evidence before the court

indicated appellant suffered from a long-standing disorder of serious magnitude. The psychotherapists who examined her on behalf of the county unanimously concluded the termination action was appropriate and that, because of her mental disorder, Sharon would be unable to provide care and control for the minor. While a psychologist was appointed on behalf of appellant, it is significant that he was never called to testify for her, nor was any report by him entered into evidence. In fact, no evidence of any kind was offered in defense of this action. This strongly suggests any such information would have been unhelpful. No claim is tendered that counsel failed in his duty to his client. In view of all the facts, it does not appear reasonably probable that a result more favorable to appellant would have been reached had she represented herself. (*People* v. *Sharp, supra,* 7 Cal.3d at pp. 461-463; *People* v. *Watson, supra,* 46 Cal.2d at p. 837.)

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

A petition for a rehearing was denied February 17, 1987.