111 Cal.Rptr.2d 732 (2001)
92 Cal.App.4th 239
The PEOPLE, Plaintiff and Respondent,
v.
Benny W. WILLIAMS, Defendant and Appellant.
No. D031198.
Court of Appeal, Fourth District, Division One.
September 13, 2001.
Rehearing Denied October 12, 2001.
Ordered Not Officially Published November 28, 2001.[*]
*735 Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.
McDONALD, J.
Benny W. Williams appeals a judgment following his jury conviction on 36 counts of robbery (Pen.Code, § 211)[1] and one count of vehicle theft (Veh.Code, § 10851). Williams contends: (1) the trial court erred by denying his Faretta[2] request to represent himself; (2) there is insufficient evidence to support his conviction on one robbery count for which there is no evidence that the alleged victim was present; (3) there is insufficient evidence to support his conviction on 22 robbery counts for which there is no evidence the alleged robbery victims actually or constructively possessed the property taken; (4) the trial court erred by not instructing on the meaning of possession or constructive possession as an element of robbery; (5) the trial court erred by finding his prior Oregon attempted robbery conviction was a serious felony conviction under California's sentencing laws; (6) the trial court erred by excluding evidence that would have shown his prior California assault conviction was not a serious or violent felony under California's sentencing laws; and (7) the prosecutor violated his due process rights by presenting false evidence on his prior California assault conviction. The California Supreme Court granted a petition for review of our opinion in this case filed September 22, 1999, and subsequently on May 16, 2001, transferred the case to this court with directions to vacate our *736 opinion and reconsider this case in light of People v. Nguyen (2000) 24 Cal.4th 756, 102 Cal.Rptr.2d 548, 14 P.3d 221, People v. Jenkins (2000) 22 Cal.4th 900, 95 Cal. Rptr.2d 377, 997 P.2d 1044, and People v. Howze (2001) 85 Cal.App.4th 1380,102 Cal. Rptr.2d 887. Pursuant to our request, the parties submitted supplemental briefs discussing the relevance of those cases to this case. The opinion of this court filed September 22, 1999, is vacated and we issue this new opinion in accordance with the directions of the California Supreme Court.

FACTUAL AND PROCEDURAL BACKGROUND
In April 1994 Williams entered a Nurseryland Garden Center after it had closed for business. Williams demanded the assistant manager open the store's safe and place the stored cash in a bag. The manager complied with Williams's demand. Williams handcuffed the assistant manager and another employee. Williams fled with about $4,500.[3]
In May 1994 Williams grabbed R.E.I.'s store manager as she prepared to close the store. Williams told her and another employee to take him to the office safe. As the three walked to the office, they encountered other employees who proceeded with them to the office. Two cashiers entered the office carrying their cash drawers, and complied with Williams's order to give him the cash from the drawers. The store manager complied with Williams's order to open the safe and place the stored money in a bag. Williams fled with about $6,500.
In March 1995 after two employees of a Famous Footwear store completed closing the store, Williams pointed a gun at one employee and grabbed her hair. She complied with Williams's order to call the other employee to come to her. Williams told one employee to get down on the floor and ordered the other employee to open the safe and place the stored money in a bag. Williams fled with about $1,500.
In April 1995 a Pic-N-Save store employee entered the store before its business hours and went to an upstairs office to count the store's money. Williams entered the store and handcuffed the employee. He took about $8,000 from the store's safe and then took the employee's car keys. Williams fled in the employee's car.
In August 1995 the general manager of a Home Base store was conducting a staff meeting with about 11 other employees when Williams walked into the room and ordered everyone to get down on the floor. Williams ordered everyone into the hallway outside the room. Williams and the general manager entered the vault room, which was occupied by two employees. Williams ordered one employee to get down on the floor and the other to open the safe. Williams fled with about $4,000.
In September 1995 the assistant manager of a Home Depot store entered the store and turned off its alarm system. Williams approached the assistant manager, put a gun to his back or neck, and said, "Let's go get the money." The assistant manager could not open the safe because of its time lock. He told Williams there would be a problem if the other employees could not enter the store. Williams and the assistant manager admitted the employees into the store. Williams ordered all of the employees into a room to wait for the time lock on the safe to disengage. When the time lock disengaged, the assistant manager put the safe's money in a *737 bag and gave the bag to Williams. Williams fled with about $12,000.
In September 1996 an assistant manager of an Office Depot store was greeting customers when he observed Williams enter the store. Williams remained in the store until closing time, displayed a gun and ordered everyone to get down on the floor. Williams directed the assistant manager and another employee to open the store safe. The assistant manager opened the safe, placed bags of the safe's money in a box, and handed the box to Williams. The other employee complied with Williams's order to assist him in carrying the money. Williams fled with about $20,000.[4]
In January 1997 Williams approached a Beverages and More store employee at closing time. Williams directed the employee to the manager's booth, where another employee was working. The other employee complied with Williams's order to open the safe and place the stored money in a bag. Williams handcuffed both employees and fled with about $4,000.
The jury returned guilty verdicts on 36 robbery counts and one vehicle theft count relating to these incidents.[5] The jury found true allegations that Williams personally used a firearm in committing the 36 robberies (§ 12022.5, subd. (a)(1)). In a bifurcated trial, the court found true allegations that Williams had two prior serious felony convictions within the meaning of section 667, subdivision (a)(1) and two prior serious or violent felony convictions within the meaning of section 667, subdivisions (b) through (i). The trial court sentenced Williams to a determinate term of 129 years 8 months and an indeterminate term of 140 years to life.[6]
Williams timely filed a notice of appeal.

DISCUSSION

I

The Trial Court Erred by Denying Williams's Timely Request to Represent Himself
Williams contends the trial court erred by denying his Faretta request to represent himself and thereby violated his Sixth Amendment right to self-representation.

A
On March 3, 1998, the trial commenced in this case. On January 16 (when the trial was scheduled to begin January 21), Williams's counsel informed the trial court that Williams wished to represent himself *738 and submitted a Lopez[7] acknowledgement of rights signed by Williams. The Lopez form advised Williams that "extra time for preparing the case for motions or for trial will not be granted. . . ." Williams's counsel stated he disagreed with his client's request to represent himself and moved for an order requiring Williams to undergo a competency evaluation. The trial court granted the motion for a competency evaluation, and suspended the criminal proceedings pending a determination of Williams's competency.
On February 23, a hearing was held on Williams's competency and request for self-representation. Dr. Gregg Michel, apparently a psychologist, submitted a written report[8] and testified that Williams did not have any mental illness that impaired his ability to understand the nature and significance of the court proceedings. Dr. Michel nevertheless stated that he believed it "would be a disaster" if Williams represented himself. Dr. Michel testified that Williams told him he had not researched the law relating to his case and he would be requesting a continuance to obtain another investigator for his case. The trial court found that Williams was competent to stand trial.
On Williams's request to represent himself, his counsel argued, "[I]t's not a rational choice and [Williams] doesn't have the ability to in any way effectively represent himself or even make the choice to represent himself, and I think it would be, as the doctor mentioned, disastrous for him to do that, and that I would urge the court to deny [Williams's self-representation request]. . . ." The prosecutor also asked the court to deny the request, arguing that Williams's self-representation request was a manipulative delay tactic intended to prejudice the prosecution's case through the loss of prosecution witnesses. Williams's counsel replied:
"I believe Mr. Williams took a position that he was not, at least as of the date that the Faretta motion was made, he wasn't making a request for a delay; however, I did note that there was some contrary information in Dr. Michel's report regarding those issues, and it may be that Mr. Williams because of his, you know, some cognitive dysfunction that he . . . doesn't understand what `in pro per' means and what you do, and he doesn't have a realistic understanding of what's involved and that that's one of the reasons why I felt and still feel he should not be allowed to be his own attorney. It would just be very disastrous for him. . . . I just don't feel he understands what he's dealing with." (Italics added.)
Williams's counsel added that he believed the origin of Williams's wish to represent himself was a fellow inmate who had represented himself and counseled Williams to represent himself.
The trial court found:
"[B]ased on Dr. Michel's report on page 6, he indicates that it's his opinion that Mr. Williams would not be able to effectively represent himself and he is likely to make a mockery of the court system, and there is nothing, however, in his current clinical condition including the terms of the natural competency issue, I've already made the finding that I believe based on what I have read and heard that Mr. Williams is competent, however, I'm going to deny his [Faretta] motion on two grounds; specifically, one *739 of them being his psychiatric makeup. And in the event that this gets beyond this courthouse at any future date, I'm going to further make the finding that it was done in January, on January 16, and the trial date was five days beyond that date, and Mr. Williams first made his [Faretta ] motion before me, that it was made for purposes of delay.

"I note that there are 99 counts, serious and violent felonies charged against Mr. Williams, including numerous robberies with an allegation he personally used a gun. Additionally, there are two serious felony priors alleged, as well as two prior strike convictions, in 1978 out of San Diego, and another one out of the State of Oregon for attempted robbery, and based on my knowledge of the sentencing it appears that Mr. Williams is looking at . . . a very substantial sentence that ultimately would lead to his imprisonment for the rest of his life, and so I'm going to, on two bases, I've denied the [Faretta] motion, one is the psychiatric/psychological evaluation done by Dr. Michel, and, secondly, and very importantly, I find that it was done for purposes of delay." (Italics added.)
The trial court added that it "place[d] great weight on what [Williams's counsel] had indicated as well, his objection to the [Faretta motion]." The trial court set February 27 as the trial date, but the trial date was later postponed and the trial actually commenced on March 3.

B
In Faretta v. California, supra, 422 U.S. at page 819, 95 S.Ct. 2525, the court held that the right to self-representation was necessarily implied in the Sixth Amendment of the United States Constitution.[9] The court stated: "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." (Faretta v. California, supra, at pp. 819-820, 95 S.Ct. 2525.) The court noted that although "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts," it concluded: "Personal liberties are not rooted in the law of averages. The right to defend is personal." (Id. at p. 834, 95 S.Ct. 2525.) However, "in order to represent himself, the accused must `knowingly and intelligently' forgo those relinquished benefits [of the right to counsel]. [Citations.]" (Id. at p. 835, 95 S.Ct. 2525.) The court stated:
"Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'" (Ibid., quoting Adams v. United States ex rel. McCann (1942) 317 U.S. 269, 279 [, 63 S.Ct. 236, 87 L.Ed. 268].)
A defendant's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." (Faretta v. California, supra, at p. 836, 95 S.Ct. 2525.)
*740 In Godinez v. Moran (1993) 509 U.S. 389, at page 399, 113 S.Ct. 2680, 125 L.Ed.2d 321, the court held that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." (Original italics, fn. omitted.) Therefore, a finding that a defendant is competent to stand trial is also a finding that a defendant is competent to waive the right to counsel and assert the right of self-representation. (Id. at pp. 396-402, 113 S.Ct. 2680.) The court stated that although there is no higher standard of competency for a defendant's waiver of counsel and assertion of the right to self-representation, "a determination that he is competent to stand trial is not enough; the waiver [of the right to counsel] must also be intelligent and voluntary before it can be accepted." (Id. at p. 402, 113 S.Ct. 2680, fn. omitted.) The court noted: "The purpose of the `knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." (Id, at p. 401, fn. 12, 113 S.Ct. 2680, original italics.)
In People v. Windham (1977) 19 Cal.3d 121, at page 128, 137 Cal.Rptr. 8, 560 P.2d 1187, the court noted that Faretta applies to California criminal proceedings:
"[W]hen a motion to proceed pro se is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (Original italics.)
A defendant's motion for self-representation is timely if it is unequivocally asserted "within a reasonable time prior to the commencement of trial."[10] (Ibid., italics added.) The court noted:
"For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request." (Id. at p. 128, fn. 5 [, 137 Cal.Rptr. 8, 560 P.2d 1187].)
In People v. Burton (1989) 48 Cal.3d 843, at page 852, 258 Cal.Rptr. 184, 771 P.2d 1270, the court stated: "The `reasonable time' requirement is intended to prevent the defendant from misusing the [self-representation] motion to unjustifiably delay trial or obstruct the orderly administration of justice."

C
Williams contends that because he was found competent, intelligently and voluntarily waived his right to assistance of counsel, timely requested self-representation, and did not request a continuance of the trial, the trial court erred by denying his request to represent himself. The People agree that Williams was found competent to stand trial and that under Godinez v. Moran, supra, 509 U.S. 389, 113 *741 S.Ct. 2680, 125 L.Ed.2d 321, the same standard applied to determine his competency to waive counsel and represent himself. Accordingly, the People concede, and we conclude, that Williams was competent to waive counsel and represent himself.[11]
The People argue that Williams did not voluntarily and intelligently waive his right to counsel and request self-representation. They implicitly assert that the trial court's reliance on Williams's "psychiatric makeup" and his apparent inability to effectively represent himself as reasons to deny his request was, in effect, a finding that Williams did not voluntarily, knowingly and intelligently waive his right to counsel and request self-representation. They note that both Dr. Michel and Williams's counsel stated that they believed Williams could not rationally represent himself and that self-representation would be a disaster. However, the trial court did not question Williams as to whether his request was voluntary, knowing and intelligent, and did not make any express finding on those issues. The only evidence received directly from Williams was his Lopez form in which he acknowledged that he was advised on various problems of self-representation: (1) he faced a possible sentence of up to 1,000 years if convicted of all charges; (2) he would not receive special or more lenient treatment from the prosecutor or court if he represented himself; (3) he would not be granted extra time to prepare his case for trial; and (4) that the "Court advised the defendant that self-representation is almost always unwise and that persons exercising such right may conduct the case in a manner harmful to themselves." Absent evidence to the contrary, Williams's self-representation request was presumptively voluntary, knowing and intelligent. The trial court's implicit finding, based on Dr. Michel's testimony and Williams's counsel's argument, that Williams's self-representation request was ill-advised and not in his best interests because of the gravity of the charges against him was not a sufficient basis for a finding that Williams's self-representation request was not voluntary, knowing or intelligent. It is irrelevant whether Williams's decision was unwise or he lacked technical legal knowledge to effectively represent himself. (People v. Windham, supra, 19 Cal.3d at p. 128, 137 Cal. Rptr. 8, 560 P.2d 1187; People v. Joseph (1983) 34 Cal.3d 936, 943, 196 Cal.Rptr. 339, 671 P.2d 843; People v. Term (1979) 23 Cal.3d 103, 113, 151 Cal.Rptr. 633, 588 P.2d 773, disapproved on other grounds in People v. Chadd (1981) 28 Cal.3d 739, 750, fn. 7, 170 Cal.Rptr. 798, 621 P.2d 837; People v. Robinson (1997) 56 Cal.App.4th 363, 371-372, 65 Cal.Rptr.2d 406 [defendant's education level and severity of charges are irrelevant].) Because the trial court did not directly advise Williams of the "dangers and disadvantages of self-representation" (Faretta v. California, supra, 422 U.S. at p. 835, 95 S.Ct. 2525; cf. People v. Robinson, supra, at p. 371, 65 Cal.Rptr.2d 406 [trial court advised defendant of problems inherent in self-representation] ), it had no basis for a finding that Williams did not actually understand the significance and consequences of self-representation or that his request was coerced. (Godinez v. Moran, supra, 509 U.S. at p. 401, fn. 12, 113 S.Ct. 2680; People v. Joseph, supra, at p. 944, 196 Cal.Rptr. 339, 671 P.2d 843.) Our independent *742 review of the record shows that Williams's waiver of counsel and self-representation request were voluntary, knowing and intelligent. (People v. Marshall (1997) 15 Cal.4th 1, 23-24, 61 Cal.Rptr.2d 84, 931 P.2d 262 [de novo standard of review applies].)
The People also argue that Williams's request for self-representation was untimely and a continuance would have been necessary had the request been granted. The People rely on Dr. Michel's testimony that Williams told him that he would request a continuance, and the trial court's finding that Williams's motion was made for the purpose of delay.
In People v. Windham, supra, 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187, the court stated that a self-representation motion is timely if it is asserted "within a reasonable time prior to the commencement of trial." (Id. at p. 128, 137 Cal. Rptr. 8, 560 P.2d 1187, italics added; People v. Jenkins, supra, 22 Cal.4th at p. 959, 95 Cal.Rptr.2d 377, 997 P.2d 1044.) Windham noted that the timeliness requirement was intended to preclude defendants from misusing the Faretta self-representation right to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. (Windham, supra, at p. 128, fn. 5, 137 Cal.Rptr. 8, 560 P.2d 1187.) The court exemplified misuse by stating that a Faretta motion made the day before trial in conjunction with a request for a continuance of the trial ordinarily would be considered an untimely motion. (Ibid.) Other cases have applied this timeliness requirement to deny Faretta motions that are made shortly before trial with requests for continuances. In People v. Frierson (1991) 53 Cal.3d 730, at page 740, 280 Cal.Rptr. 440, 808 P.2d 1197, the defendant made a Faretta motion two days before trial and also requested a 60 day continuance. The court concluded that the self-representation motion was untimely because it was not made within a reasonable period before commencement of the trial. (Id. at p. 742, 280 Cal.Rptr. 440, 808 P.2d 1197.) In People v. Ruiz (1983) 142 Cal.App.3d 780, at pages 784-791, 191 Cal. Rptr. 249, the court concluded that a Faretta motion made six days before a scheduled trial date[12] was untimely because the motion was conditioned on a trial continuance. After the trial court informed the defendant that it would deny his request for a continuance, the defendant withdrew his Faretta motion and requested representation by counsel. (Id. at pp. 786, 789, 191 Cal.Rptr. 249.) The court concluded that the trial court's refusal to grant a continuance was in effect a denial of the Faretta motion. (Id. p. 789, 191 Cal.Rptr. 249.) However, because the motion was necessarily conditioned on the granting of a continuance, the court concluded the motion was untimely. (Id at p. 791, 191 Cal.Rptr. 249.)[13]
*743 In contrast to cases finding Faretta motions untimely because they were made shortly before trial in conjunction with a continuance request, other cases have concluded Faretta motions are timely and must be granted if made a reasonable time before the commencement of trial without a request for continuance. In People v. Tyner (1977) 76 Cal.App.3d 352, 143 Cal. Rptr. 52, the defendant made a Faretta motion on the day of, but prior to, commencement of the trial and did not request a continuance. (Id. at pp. 354-355, 143 Cal.Rptr. 52.) The court implicitly coneluded the motion was timely, stating:
"[S]ince it is indisputable that [defendant's] motion for self-representation was made prior to trial and was not accompanied by any request for a continuance, its grant would not have obstructed the orderly administration of justice. Therefore, we can only conclude [defendant] was denied his otherwise unconditional constitutional right of self-representation." (Id, at p. 355, 143 Cal.Rptr. 52.)
In People v. Herrera (1980) 104 Cal. App.3d 167, 163 Cal.Rptr. 435, the defendant made a Faretta motion on the day of, but prior to, the commencement of trial and did not request a continuance. (Id. at pp. 171, 173-175, 163 Cal.Rptr. 435.) We applied the holding in People v. Tyner, supra, 76 Cal.App.3d 352, 143 Cal.Rptr. 52, and concluded "the motion was not untimely." (People v. Herrera, supra, at p. 175, 163 Cal.Rptr. 435.) Accordingly, we reversed the judgment because "[t]he erroneous deprivation of such timely asserted constitutional rights of the defendant in a criminal trial is patently prejudicial and reversible error [that] cannot be considered as harmless." (Id. at pp. 175-176, 163 Cal.Rptr. 435.)
In In re Justin L. (1987) 188 Cal.App.3d 1068, at pages 1076, 233 Cal.Rptr. 632 to 1077, 233 Cal.Rptr. 632, the court stated: "A motion for self-representation made on the first day of trial and unaccompanied by a request for a continuance is timely. [Citations.]" The court concluded that the appellant's Faretta motion, which was filed 27 days before the commencement of trial and without a request for a continuance, was timely and the trial court erred when it considered and denied her motion on the first day of trial.[14] (Id, at pp. 1072, 1076-1077, 233 Cal.Rptr. 632; see also Akins v. State (1997) 330 Ark. 228, 955 S.W.2d 483, 488-89 [Faretta motion made four days before trial was timely].)
Although case law does not provide a bright-line test for determining the timeliness of a Faretta motion, the weight of case law supports our conclusion that in the circumstances of this case Williams's self-representation motion was timely.[15] *744 His January 16, 1998, Faretta motion was made five days before the scheduled trial date and 46 days prior to the commencement of trial on March 3, and his motion was not accompanied by a request for a continuance. Although at the time Williams's motion was made the trial was scheduled to begin on January 21, on January 16 the trial court, without ruling on that motion, suspended all criminal proceedings (including the scheduled trial) when it granted Williams's counsel's motion for a competency evaluation. Williams's counsel apparently requested the competency evaluation without Williams's consent and did so because he believed Williams's wish to represent himself was not a rational decision. Therefore, because Williams did not request that his competency be evaluated or that the trial date otherwise be continued, he cannot personally be charged with causing the delay in the commencement of trial. Furthermore, the trial court did not consider Williams's January 16 Faretta motion until February 23 after it found him competent to stand trial. At that time, the trial court could not reasonably conclude that Williams's Faretta motion, which was made 38 days before, was untimely because it was required to base its decision on the facts as they appeared at the time of the February 23 hearing on Williams's Faretta motion. (People v. Marshall (1997) 15 Cal.4th 1, 24-25, fn. 2, 61 Cal. Rptr.2d 84, 931 P.2d 262; People v. Moore (1988) 47 Cal.3d 63, 80, 252 Cal.Rptr. 494, 762 P.2d 1218.) A Faretta motion made weeks before both the hearing on the motion and the commencement of trial is timely. (Faretta v. California, supra, 422 U.S. at p. 835, 95 S.Ct. 2525 [motion made "weeks before trial" was timely]; Moore v. Calderon, supra, 108 F.3d at p. 265; In re Justin L., supra, 188 Cal.App.3d at pp. 1076-1077, 233 Cal.Rptr. 632 [motion made 27 days before trial was timely].) The record also shows that in his Lopez waiver form Williams expressly acknowledged that the trial court would not grant him a continuance or extra preparation time if he represented himself. Although Williams did not directly address the trial court during the February 23 hearing on his Faretta motion, his counsel stated that Williams "wasn't making a request for a delay." Any evidence to the contrary contained in Dr. Michel's report or testimony is insufficient to rebut that representation. Although Williams apparently told Dr. Michel that he planned to request a continuance from the court to further investigate his case, Williams did not request a continuance from the trial court and in effect assured the court that he would not seek or require a continuance if his self-representation motion were granted. Furthermore, Williams was present at the February 23 hearing and the trial court did not inquire of him whether he intended to request a continuance. Accordingly, because Williams's Faretta motion was filed 46 days prior to the commencement of trial and the prior postponement of the then-scheduled trial date was not chargeable to him, we conclude his motion was asserted "within a reasonable time prior to the commencement of trial" and was unaccompanied by a request for, and would not necessarily require, a continuance. (People v. Windham, supra, 19 Cal.3d at p. 128, 137 Cal.Rptr. 8, 560 P.2d 1187.) His motion therefore was timely and the trial court erred by denying it.[16]
*745 Although one of the grounds for the trial court's decision was its finding that Williams's Faretta motion was made "for purposes of delay," the record does not support that finding. The only factor the trial court referred to in finding that Williams's motion was made for purposes of delay was that Williams had been in custody on the instant charges for over a year and waited until five days before the then-scheduled trial date to make his Faretta motion. That factor was insufficient to support the trial court's finding that the Faretta motion was made for purposes of delay.[17] Because the trial court did not inquire of Williams the reasons for his Faretta motion, there is no other evidence to show that his motion was made for purposes of delay or to otherwise interfere with the orderly administration of justice. Nothing in the record shows that Williams at the time of his motion would have been unable, or did not intend, to proceed with the trial (which was then scheduled to begin in five days and ultimately, through no fault of Williams, actually commenced 46 days later) if his motion had been granted. Therefore, assuming arguendo a Faretta motion made as a "tactic to secure delay" is untimely (see, e.g., Moore v. Calderon, supra, 108 F.3d at p. 264), we nevertheless conclude that Williams's Faretta motion was timely because there was insufficient evidence to support a finding that Williams's motion was filed for purposes of delay. (Cf. People v. Perez (1992) 4 Cal.App.4th 893, 903-904, 6 Cal.Rptr.2d 141.)

D
The cases of People v. Jenkins, supra, 22 Cal.4th 900, 95 Cal.Rptr.2d 377, 997 P.2d 1044 and People v. Howze, supra, 85 Cal.App.4th 1380, 102 Cal.Rptr.2d 887, to which our attention has been directed by the Supreme Court, are not inconsistent with our conclusion that Williams's Faretta motion was erroneously denied. Both Jenkins and Howze focus on the trial court's discretion to deny a Faretta motion when the motion is not made within a reasonable time before commencement of trial. In Jenkins, the Faretta motion was made after the commencement of trial, and in Howze the Faretta motion was made two days before the commencement of trial. Both cases held the Faretta motion was not made within a reasonable time before trial and the trial court therefore had discretion to deny the motion even though no request for a continuance was made in connection with the motion. Both cases emphasized that in exercising its discretion the trial court should consider whether the trial proceedings were likely to be disrupted by the defendant's self-representation. The likelihood of disruption could be evaluated based on the defendant's disruptive behavior prior to commencement of the trial. In each case the court recited examples of the defendant's pretrial disruptive behavior.
*746 In the instant case, Williams's Faretta motion was made substantially earlier than the Faretta motions in Jenkins and Howze. Furthermore, the record in the instant case contains no evidence of pretrial disruptive conduct by Williams. We therefore conclude that our decision in this case is not inconsistent with the principles articulated in either Jenkins or Howze.

E
The erroneous denial of a timely Faretta motion is reversible per se. (People v. Joseph, supra, 34 Cal.3d at p. 948, 196 Cal.Rptr. 339, 671 P.2d 843; People v. Robinson (1997) 56 Cal.App.4th 363, 373, 65 Cal.Rptr.2d 406; People v. Herrera, supra, 104 Cal.App.3d at p. 175, 163 Cal. Rptr. 435; People v. Tyner, supra, 76 Cal. App.3d at p. 352, 143 Cal.Rptr. 52.) Because the trial court erred by denying Williams's timely Faretta motion, his convictions on all counts must be reversed.

II

There Is Insufficient Evidence to Support Williams's Conviction of Robbery on Count 30
Williams contends there is insufficient evidence to support his conviction of robbery on count 30.[18] Count 30 alleged that Williams robbed Dan Meyers during the course of the September 10, 1995, Home Depot incident. However, none of the four witnesses who testified at trial about that incident mentioned that Meyers was present during the incident.
The People concede there is insufficient evidence to support Williams's conviction on count 30. Because there is no evidence that Meyers was present during the September 10, 1995, incident, Williams's conviction of robbery on count 30 must be reversed.

III

There Is Insufficient Evidence to Support Williams's Conviction on 20 Other Robbery Counts
Williams contends that because there is no evidence certain alleged victims had either actual or constructive possession of the property taken, there is insufficient evidence to support his conviction on 22 of the 36 robbery counts.[19] He concedes there is sufficient evidence that the other 14 alleged robbery victims had either actual or constructive possession of the property taken.[20]

A
Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or *747 immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) The victim of a robbery need not be the owner of the property taken. (People v. Estes (1983) 147 Cal.App.3d 23, 26, 194 Cal.Rptr. 909.) The requisite possession of property is not defined by statute but includes actual and constructive possession of the property. (Ibid; People v. Nguyen, supra, 2A Cal.4th at p. 764, 102 Cal.Rptr.2d 548, 14 P.3d 221; People v. Bekele (1995) 33 Cal.App.4th 1457, 1461, 39 Cal.Rptr.2d 797, disapproved on other grounds in People v. Rodriguez (1999) 20 Cal.4th 1, 13-14, 82 Cal.Rptr.2d 413, 971 P.2d 618.) Nguyen stated: "Section 211 reflects . . . the traditional approach that limits victims of robbery to those persons in either actual or constructive possession of the property taken." (Nguyen, supra, at p. 764, 102 Cal.Rptr.2d 548, 14 P.3d 221.) Actual possession of personal property is fairly obvious and generally depends on a victim's physical relationship to the property. (People v. Childs (1980) 112 Cal.App.3d 374, 382-383, 169 Cal.Rptr. 183, disapproved on other grounds in People v. Hernandez (1981) 30 Cal.3d 462, 468, fn. 6, 179 Cal.Rptr. 239, 637 P.2d 706 and in People v. Ramos (1982) 30 Cal.3d 553, 589, fn. 16, 180 Cal.Rptr. 266, 639 P.2d 908.) In contrast, constructive possession generally depends on a victim's intangible relationship to the property. More than one person may constructively possess property at the same time and be victims of the same taking. (People v. Estes, supra, at p. 27, 194 Cal.Rptr. 909; People v. Miller (1977) 18 Cal.3d 873, 881, 135 Cal. Rptr. 654, 558 P.2d 552; People v. Galoia (1994) 31 Cal.App.4th 595, 597, 37 Cal. Rptr.2d 117.) In Sykes v. Superior Court (1994) 30 Cal.App.4th 479, at page 484, 35 Cal.Rptr.2d 571, the court stated: "Constructive possession depends upon a special relationship with the owner of the property. . . ." (Italics added.) In People v. Galoia, supra, at page 599, footnote 1, 37 Cal.Rptr.2d 117, the court noted that the "special relationship" necessary to create a possessory interest in the property taken "may be established only by proving the victim has a legally recognizable interest in the property or actually possessed it." (Italics added.) In People v. Gordon (1982) 136 Cal.App.3d 519, at page 529, 186 Cal.Rptr. 373, the court stated persons could be robbery victims if "the victims were responsible for protecting and preserving the property taken." (Italics added.) In People v. Hamilton (1995) 40 Cal. App.4th 1137, at page 1143, 47 Cal.Rptr.2d 343, the court in dictum stated: "For the purposes of robbery, it is enough that the person presently has some loose custody over the property, is currently exercising dominion over it, or at least may be said to represent or stand in the shoes of the true owner." In People v. Bekele, supra, at page 1461, 39 Cal.Rptr.2d 797, the court stated: "A decision from the State of Washington provides a helpful explanation of the applicable rule: `A person must have an ownership interest in the property taken, or some representative capacity with respect to the owner of the property taken, or actual possession of the property taken, for the taking of the property to constitute a robbery.' (State v. Latham (1983) 35 Wash.App. 862 [670 P.2d 689, 691], italics added.)" Bekele concluded that a person must have express or implied authority from the property's owner to act regarding the property for the person to have constructive possession of the property taken. (People v. Bekele, supra, at p. 1462, 39 Cal.Rptr.2d 797.) In People v. Guerin (1972) 22 Cal.App.3d 775, 99 Cal. Rptr. 573 (disapproved on other grounds in People v. Ramos, supra, 30 Cal.3d at p. 589, 180 Cal.Rptr. 266, 639 P.2d 908), at page 782, 99 Cal.Rptr. 573, the court concluded there was insufficient evidence to support one of four robbery convictions *748 because there was no evidence the alleged victim, a box boy, had any dominion or control over the money taken. In People v. Jones (1996) 42 Cal.App.4th 1047, at pages 1054, 50 Cal.Rptr.2d 46 to 1055, 50 Cal.Rptr.2d 46, the court disagreed with Guerin's conclusion and speculated that the box boy's possible adolescent age may have swayed the court to conclude he had insufficient authority over the money taken. We disagree with Jones and decline to adopt its apparent presumption that any employee, such as the store's truck driver in Jones, has a sufficient representative capacity with respect to the employer, the owner of the property, to be a victim of a robbery. (Id at pp. 1054-1056, 50 Cal. Rptr.2d 46.) Jones was decided by a divided court and we agree with the dissenting opinion in which Justice Johnson stated: "The evidence of truck driver Valdez's role at the store and during the robbery was not sufficiently illuminated to show Valdez properly can be treated as having the same implied authority over the cash and store property as have store clerks and security personnel." (Id at p. 1056, 50 Cal.Rptr.2d 46, dis. opn. of Johnson, J.) He further stated: "In this case, the circumstances of Valdez's role at the store and his duties with respect to the owner's property inside the store are not described so as to draw the requisite conclusion the truck driver, just like the store clerks and security personnel of a store, had a representative capacity with respect to the property. There were no circumstances in this case showing his implied authority over the property. The evidence is inadequate to demonstrate Valdez `possessed' the money . . . taken during the robbery and thus the robbery of Valdez alleged in count 2 should be reversed." (Id. at p. 1057, 50 Cal.Rptr.2d 46, dis. opn. of Johnson, J.)

B
We conclude there is insufficient evidence to support 20 of Williams's 36 robbery convictions; there is no evidence to show the alleged victims had actual or constructive possession of the property taken.[21] Williams correctly notes there was no testimony on the relationship of those alleged victims to the property taken. In the May 21, 1994, R.E.I, incident, there was evidence showing one of the fifteen alleged victims, the store manager, had actual possession of the money taken and three other victims, all cashiers, either had actual possession or, by virtue of their employee responsibilities as cashiers, had constructive possession of the money taken. There was no evidence that the other 11 employees had any particular relationship or responsibilities with respect to the money taken by Williams. The record does not show the job titles or responsibilities of those 11 employees. Employee status, in itself, does not show that an alleged robbery victim had a sufficient relationship to the property taken for an employee to be deemed, per se, to be in constructive possession of the money taken. Furthermore, status as an employee does not in itself show the person had a legally recognizable interest in the property (People v. Galoia, supra, 31 Cal.App.4th at p. 599, fn. 1, 37 Cal.Rptr.2d 117; Sykes v. Superior Court, supra, 30 Cal.App.4th at p. 484, 35 Cal.Rptr.2d 571), was responsible for protecting and preserving the *749 property (People v. Gordon, supra, 136 Cal.App.3d at p. 529, 186 Cal.Rptr. 373), or exercised dominion or control over the property or represented the owner's interest in the property (People v. Guerin, supra, 22 Cal.App.3d at p. 782, 99 Cal.Rptr. 573). Mere presence of those 11 employees during the R.E.I, incident did not make them robbery victims. Absent evidence that those 11 employees had actual or constructive possession of the money taken from R.E.I, Williams's convictions on those robbery counts[22] must be reversed.
Similarly, there is insufficient evidence to support Williams's robbery convictions on seven counts relating to the September 10, 1995, Home Depot incident.[23] Williams concedes that there is sufficient evidence to show that the assistant store manager and another employee, the vault supervisor, had actual or constructive possession of the money taken by Williams from the store's vault. However, there was no evidence on the job titles or responsibilities of the other seven alleged robbery victims. It is possible that one or more of these employees had no job duties relating to the store's money. For example, large retail stores like Home Depot may employ certain employees whose only function is to restock merchandise or to answer customer questions. Those employees would have no job responsibility over the store's money. Because there is no evidence to show the seven alleged robbery victims had either actual or constructive possession of the money taken from Home Depot, Williams's robbery convictions on those seven counts[24] must be reversed.
Without discussing the particular facts of each remaining count in contention, we apply the same reasoning to conclude there is insufficient evidence to show the alleged robbery victims in two other counts[25] had either actual or constructive possession of the property taken. Accordingly, Williams's convictions on those two counts must be reversed.[26]
With regard to the final count in contention (count 45) the record shows that victim Moore had actual possession of the property taken during the course of the robbery. We therefore conclude there is substantial evidence to support Williams's conviction of robbery charged in count 45.
The case of People v. Nguyen, supra, 24 Cal.4th 756, 102 Cal.Rptr.2d 548, 14 P.3d 221, to which our attention has been directed by the Supreme Court, is not inconsistent with our conclusion: the record in this case does not contain sufficient evidence of the necessary nexus between certain store employees and the property of the employer to support a robbery conviction based on the mere presence of those employees during the robberies. Nguyen held that the mere *750 presence of a nonemployee in a store was insufficient to support a conviction of robbery of the nonemployee based on the taking of store property. The court reaffirmed the principle that in California robbery requires substantial evidence that property is taken by force or fear from the victim who has actual or constructive possession of the property taken; the mere presence of a visitor to a store is insufficient to establish constructive possession of store property. Although Nguyen did not directly consider the factors required to establish constructive possession of store property by store employees sufficient to establish employees as robbery victims when the store property is taken, we conclude that, as in the case of a visitor, mere presence of the employee is insufficient. There must be evidence of some nexus between the employee and the store's property, other than mere presence, to establish constructive possession. The necessary nexus has been found when one or two employees were the sole employees present at the store and therefore responsible for and in constructive possession of store property (People v. Downs (1952) 114 Cal.App.2d 758, 251 P.2d 369; People v. Arline (1970) 13 Cal.App.3d 200, 91 Cal.Rptr. 520, disapproved on other grounds in People v. Hall (1986) 41 Cal.3d 826, 831-834, 226 Cal.Rptr. 112, 718 P.2d 99; People v. Masters (1982) 134 Cal. App.3d 509, 185 Cal.Rptr. 134), and when the employee was a security guard charged with protecting the store's property. (People v. Estes, supra, 147 Cal. App.3d 23, 194 Cal.Rptr. 909.) In our view, the necessary nexus is not present when other employees responsible for store property are present and the additional employees are present but have no responsibility for the property. The latter category of employees do not have the requisite constructive possession to be victims of robbery of store property. In the instant case, the employee victims in the counts we have reversed for insufficient evidence of constructive possession of store property were merely present without the requisite nexus to the store property taken to be in constructive possession of that property.

IV

We Do Not Decide Williams's Remaining Contentions
Williams also contends that the trial court erred by: (1) not instructing sua sponte on the meaning of possession and constructive possession as an element of a robbery offense; (2) finding that his prior Oregon attempted robbery conviction was a serious felony under California law; (3) excluding evidence that showed his prior California assault conviction was not a serious felony under California law; and (4) allowing the prosecutor to violate his due process rights by presenting false evidence on his prior California assault conviction. Because we reverse the judgment on other grounds, we do not decide those additional contentions.[27]

DISPOSITION
The judgment is reversed.
HALLER, Acting P.J, and McINTYRE, J, concur.
NOTES
[*] The Supreme Court ordered that the opinion be not officially published. (See California Rules of Court Rules 976 and 977.)
[1] All statutory references are to the Penal Code unless otherwise specified.
[2] Faretta v. California (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
[3] Police found Williams's fingerprint on the doorknob of the storage room.
[4] Police found Williams's fingerprints on a pack of yellow legal pads he had been seen holding.
[5] The jury acquitted Williams on charges arising out of incidents occurring on five other dates.
[6] On Williams's convictions for offenses that occurred before his second prior serious felony conviction in Oregon on July 8, 1996, the trial court sentenced him as a second-strike offender, imposing a five-year upper term for one robbery offense, doubling that term under the "Three Strikes" law, and adding a consecutive five-year enhancement for personal firearm use. On each conviction of the remaining 31 pre-July 8, 1996, robbery offenses, the court imposed consecutive terms of two years (one-third the mid-term), with consecutive one-year four-month enhancements for personal firearm use. On Williams's vehicle theft conviction, the court imposed a consecutive term of one year four months. The court imposed two consecutive five-year terms for Williams's two prior serious felony convictions (§ 667, subd. (a)). On Williams's convictions for four post-July 8, 1996, robbery offenses, the court sentenced him as a third-strike offender and imposed four consecutive 25-year-to-life terms, plus four consecutive 10 year enhancements for personal firearm use.
[7] People v. Lopez (1977) 71 Cal.App.3d 568, 138 Cal.Rptr. 36.
[8] The parties stipulated to admission of the report and to Dr. Michel's qualifications as an expert. However, Dr. Michel's report is not included in the appellate record.
[9] The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." (Italics added.) The rights set forth in the Sixth Amendment apply to defendants in state criminal court proceedings through the Fourteenth Amendment's due process clause. (Faretta v. California, supra, 422 U.S. at p. 818, 95 S.Ct. 2525.)
[10] If a self-representation request is untimely (e.g., made after commencement of the trial), a trial court has discretion to grant or deny that request and "shall inquire sua sponte into the specific factors underlying the request," including: "[1] the quality of counsel's representation of the defendant, [2] the defendant's prior proclivity to substitute counsel, [3] the reasons for the request, [4] the length and stage of the proceedings, and [5] the disruption or delay which might reasonably be expected to follow the granting of such a motion." (People v. Windham, supra, 19 Cal.3d at p. 128, 137 Cal.Rptr. 8, 560 P.2d 1187, original italics; People v. Jenkins, supra, 22 Cal.4th at p. 959, 95 Cal.Rptr.2d 377, 997 P.2d 1044; People v. Bradford (1997) 15 Cal.4th 1229, 1365, 65 Cal.Rptr.2d 145, 939 P.2d 259; People v. Howze, supra, 85 Cal. App.4th at p. 1397, 102 Cal.Rptr.2d 887.)
[11] Although the trial court denied Williams's self-representation request in part because of his "psychiatric makeup," we conclude this reason did not contradict its finding that Williams was competent to stand trial, which, in turn, mandates a finding that he was competent to waive counsel and represent himself. (Godinez, supra, 509 U.S. at p. 391, 113 S.Ct. 2680.)
[12] The defendant moved to represent himself on the Friday before a Thursday scheduled trial date. (People v. Ruiz, supra, 142 Cal. App.3d at p. 784, 191 Cal.Rptr. 249.)
[13] In People v. Moore (1988) 47 Cal.3d 63, at pages 78, 252 Cal.Rptr. 494, 762 P.2d 1218 to 79, 252 Cal.Rptr. 494, 762 P.2d 1218, the court concluded that a Faretta motion made on the Friday before a trial scheduled to begin the following Monday was untimely because the defendant also requested a continuance to prepare for trial. In People v. Clark (1992) 3 Cal.4th 41, at pages 99, 10 Cal. Rptr.2d 554, 833 P.2d 561 to 100, 10 Cal. Rptr.2d 554, 833 P.2d 561, the court concluded that the trial court had discretion to deny a Faretta motion because it was made when the trial date was being continued on a day-to-day basis, was in effect made on the eve of trial and was untimely. In People v. Rudd (1998) 63 Cal.App.4th 620, at pages 625, 73 Cal. Rptr.2d 807 to 626, 73 Cal.Rptr.2d 807, the court concluded that a Faretta motion made on the Friday before a trial scheduled to begin the following Monday was untimely. In People v. Howze, supra, 85 Cal.App.4th at page 1397, 102 Cal.Rptr.2d 887, the court concluded that a Faretta motion made two days before trial, without a request for a continuance, was untimely.
[14] However, because that case did not involve a criminal proceeding the court did not apply the reversible per se standard and instead concluded the denial of the self-representation motion was harmless error. (In re Justin L., supra, 188 Cal.App.3d at pp. 1077-1078, 233 Cal.Rptr. 632.)
[15] Some federal courts have adopted more definitive guidelines for determining when a Faretta motion is timely. For example, in Moore v. Calderon (9th Cir.1997) 108 F.3d 261, at page 264, the court stated: "Our court has . . . established] a bright-line rule for the timeliness of Faretta requests: a request is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay. [Citations.]" In that case, the trial court made no finding that the Faretta motion was a tactic for delay, and the record did not "suggest that it was such a tactic." (Ibid.) The court concluded that the defendant's Faretta motion, which was made months before trial, was timely and the trial court erred by denying it. (Id. at p. 265.)
[16] Because Williams's Faretta motion was timely we need not address the Windham factors that a trial court must consider in exercising its discretion to grant or deny an untimely Faretta motion. (People v. Windham, supra, 19 Cal.3d at pp. 128-129, 137 Cal.Rptr. 8, 560 P.2d 1187.)
[17] Assuming the trial court also relied on Dr. Michel's testimony that Williams was manipulative and intended to request a continuance, we nevertheless conclude there was insufficient evidence to support the trial court's finding that Williams's motion was made for purposes of delay. As noted ante, Williams did not request a continuance and acknowledged that a continuance would not be granted, and his counsel stated that Williams was not seeking a continuance. Furthermore, the trial court did not avail itself of the opportunity to address Williams directly and ascertain whether he intended to request a continuance. Therefore, there is no basis on which we, or the trial court, could conclude that Williams's Faretta motion was made for purposes of delay.
[18] Although we reverse the judgment on all counts on other grounds ante, we nevertheless address this insufficiency of the evidence contention because the double jeopardy prohibition precludes Williams's retrial on count 30 if the evidence in support of count 30 is insufficient to support the conviction. (Burks v. United States (1978) 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1; People v. Superior Court (Marks) (1991) 1 Cal.4th 56, 72, 2 Cal.Rptr.2d 389, 820 P.2d 613.)
[19] Because we reverse Williams's conviction on one of those 22 counts (count 30) ante, we restrict our discussion to the remaining 21 alleged robbery victims in counts 7-9, 11-12, 14-17, 19-20, 22, 28-29, 31-33, 35-36, 45, and 49.
[20] Although we reverse the judgment on all counts on other grounds ante, we nevertheless address this insufficiency of the evidence contention because the double jeopardy prohibition precludes Williams's retrial on these 21 counts if the evidence is insufficient to support a conviction on those counts. (Burks v. United States, supra, 437 U.S. at p. 11, 98 S.Ct. 2141; People v. Superior Court (Marks), supra, 1 Cal.4th at p. 72, 2 Cal.Rptr.2d 389, 820 P.2d 613.)
[21] We apply the traditional standard of review in determining the sufficiency of the evidence: "[T]he reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence that is, evidence that is reasonable, credible, and of solid valuesuch that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (People v. Rodriguez, supra, 20 Cal.4th at p. 11, 82 Cal.Rptr.2d 413, 971 P.2d 618.)
[22] Counts 7-9, 11-12, 14-17, and 19-20.
[23] In part II ante, we concluded there was no evidence that Dan Meyers was present during the September 10, 1995, incident and therefore Williams's conviction on count 30 must be reversed.
[24] Counts 28-29, 31-33, and 35-36.
[25] Counts 22 and 49.
[26] Although there is insufficient evidence to support Williams's convictions of robbery on these 20 counts, in the event of a retrial Williams may be charged with and convicted of the lesser included offense of assault. There was sufficient evidence to support his conviction of that offense against each of the 20 victims. (Cf. People v. Superior Court (Marks), supra, 1 Cal.4th at pp. 71-79, 2 Cal. Rptr.2d 389, 820 P.2d 613; People v. Flores (1981) 115 Cal.App.3d 67, 76, 171 Cal.Rptr. 365; People v. Guerin, supra, 22 Cal.App.3d at pp. 782-783, 99 Cal.Rptr. 573.)
[27] We nevertheless recommend that the trial court and prosecutor carefully address these issues in any retrial of this case and also consider the applicability of Monge v. California (1998) 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615.