Filed 4/17/13  P. v. Eisenberg CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STARLING EISENBERG,<br><br>    Defendant and Appellant. | B237867<br><br>(Los Angeles County<br>Super. Ct. No. GA082891) |

APPEAL from a judgment (order granting probation) of the Superior Court of Los Angeles County, Patrick Hegarty, Judge.  Affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Starling Eisenberg appeals from the judgment (order granting probation) entered following her plea of no contest to possessing a controlled substance for sale (Health & Saf. Code, § 11351). The court suspended imposition of sentence and placed her on formal probation for three years. We affirm the judgment.

## FACTUAL SUMMARY

The record reflects that during the early hours of March 30, 2011, police went to a Burbank apartment after they received a "shots fired" call involving possible domestic violence. After police arrived, appellant told police that she was okay and that her boyfriend, Melvin Cruz, was in the bedroom. Cruz was lying in bed in the bedroom.

Police searched the apartment and recovered a box with several pill bottles, one of which contained baggies of suspected cocaine. Police saw a revolver on the kitchen floor, a bag containing ammunition, and a paper bag containing several spent casings. Police recovered from the apartment $11,343 dollars, five bags of suspected cocaine, and a marijuana pipe. Police asked appellant if it was her apartment and if everything in it belonged to her, and she replied, " 'yeah, this is my place.' "

## ISSUE

Appellant claims that when the trial court denied her motion to withdraw her no contest plea, the trial court abused its discretion because the trial court was unaware of the scope of its discretion under Penal Code section 1018.

## DISCUSSION

*The Trial Court Properly Denied Appellant's Motion to Withdraw Her Plea.*

1. *Pertinent Facts.*

a. *The Felony Complaint.*

Count 4 of the felony complaint filed in April 2011 in this case alleged that on or about March 30, 2011, appellant possessed for sale a controlled substance (cocaine) in violation of Health and Safety Code section 11351. The complaint also alleged that on or about March 30, 2011, Cruz[1] committed two counts of discharge of a firearm with gross

---

[1]    Cruz is not a party to this appeal.

2

negligence (Pen. Code, § 246.3, subd. (a); counts 1 & 2), possession of a controlled substance (cocaine) with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 3) and possession of a controlled substance (cocaine) for sale (Health & Saf. Code, § 11351; count 4).  Count 4 joined appellant and Cruz as codefendants.

b. *Appellant's June 26, 2011 Letter.*

The record contains a copy of a purported letter signed by appellant, dated June 26, 2011.  The unsworn letter is written "To whom it may concern."  (Appellant apparently wrote the letter to Deputy Public Defender John Montoya (discussed *post*), who represented appellant in this case on June 20, 2011.)  The letter reflects the following.  Appellant was aware illegal drugs were found in the apartment.  The drugs were not hers.  Appellant stated, "I have, unfortunately and irresponsibly, given free rein, and allowed too many people unsupervised access in my apartment, (which I will anticipate the drugs came from), for I do not buy drugs, and did not, or have *ever* had intent to sell drugs."  (*Sic*.)  Appellant understood that because it was her apartment, she had certain responsibilities, and "[i]f that [made her] liable for possession of such, so be it."  Much of her letter addressed dispositional or sentencing issues.

c. *Appellant's July 15, 2011 No Contest Plea.*

On July 15, 2011, the scheduled date for appellant's preliminary hearing, the court indicated in the presence of appellant and her counsel, Erin Muse, that the court had told Muse that if appellant pled no contest to count 4, the court would, inter alia, place appellant on probation for three years and order her to complete 30 days in the Probation Adult Alternative Work Service (PAAWS) program.  Appellant indicated she wanted to do this.

The court told appellant the prosecutor would ask her questions about her constitutional rights and advise her of the consequences of her plea.  The court stated, "I want you to listen to those questions carefully.  Answer how you feel is appropriate.  If you have any questions, let me know.  I'll stop the proceedings and allow you to speak to your attorney."  Appellant indicated she understood.

3

The prosecutor advised appellant of the consequences of her plea and she waived her constitutional rights. Appellant denied anyone had made promises to her to get her to plead (other than what the court had told her on July 15, 2011), denied anyone had threatened her to get her to plead, and stated she was pleading freely and voluntarily.

Appellant later pled no contest to the present charge (count 4), indicated she understood the plea was equivalent to a guilty plea, and indicated she still desired to plead no contest. The following then occurred: "[The Prosecutor]: Counsel, stipulate to the plea based on the police report and -- [¶] [Muse]: Pursuant to *People v. West*."[2] Muse concurred in the waiver of rights and the plea.

The court found appellant expressly, knowingly, intelligently, and understandingly waived her constitutional rights, and found she entered her plea freely, voluntarily, and with a full understanding of the nature and consequences of that plea. The court found a factual basis for the plea existed and the court accepted the plea. The court suspended imposition of sentence and placed appellant on formal probation for three years on the condition, inter alia, that she complete 30 days in the PAAWS program. Appellant stated she understood and accepted the terms of her probation.

d. *Appellant's July 27, 2011 Letter.*

The record contains a copy of a purported letter from appellant dated July 27, 2011. The letter is unsworn and unsigned. Page 4 of the letter indicates it was written "To whom it may concern."[3] The letter makes the following allegations.

Appellant was afraid of Cruz. Police records confirmed this, and it was documented that Cruz had told appellant several times "throughout the incident" to keep quiet. When police arrested appellant, an officer told her that the officer recognized gang tattoos on Cruz. Appellant had been unaware of them.

---

[2] This was apparently a reference to *People v. West* (1970) 3 Cal.3d 595 (*West*).

[3] We assume without deciding appellant wrote the June 26, 2011 and July 27, 2011 letters. The clerk's transcript contains a copy of a purported envelope, postmarked July 27, 2011, from appellant to attorney Montoya.

4

At a court hearing on June 20, 2011, Cruz sent to appellant a person whom Cruz referred to as Cruz's bodyguard. Cruz knew appellant would recognize the person as "potentially threatening on [Cruz's] behalf[]." The person tried to contact appellant several times throughout the day, following her in the courthouse and into the courtroom. The person boldly sat next to appellant in the courtroom.

After a hearing adjourned on July 8, 2011, appellant was walking in a hall to leave. Cruz's counsel, Michael Zimbert, was "lying in wait" for appellant. Zimbert said Cruz had instructed Zimbert to deliver a message to appellant. The message was, " 'Mel says, "Greetings and Salutations." ' " The July 27, 2011 letter stated, "However his statement was meant to be interpreted, it infuriated, concerned, and intimidated both my father and [me] how with all the steps taken, and with him being in custody, he was still able to get to me from within the courthouse walls."

On July 15, 2011, the date of appellant's no contest plea, Muse was asked for guidance concerning this case, and "[Muse] stated that if she was faced with the same type of situation that I was in, that she would 'take the bird in the hand, and take the deal.' " (Italics omitted.) Muse never mentioned to appellant "before [appellant] decid[ed] to take the plea offer" that the trial court would require appellant to register as a narcotics offender.

Montoya suggested that appellant write him a letter. Appellant did and that letter was dated June 26, 2011. The June 26, 2011 letter "show[ed] my mindset regarding the intent charge, . . . still standing by my innocence, only to change my position during my time with [Muse]." Appellant wanted to withdraw her no contest plea and did not want to "stamp [herself] guilty of a crime that [she had] never committed."

       e. *Appellant's August 2, 2011 Motion to Withdraw Her Plea, and the People's Opposition.*

On August 2, 2011, appellant filed her motion to withdraw her no contest plea (motion). The motion was supported by Montoya's declaration, which declared the following on information and belief. Zimbert represented Cruz. At the close of Cruz's

5

July 15, 2011 preliminary hearing, the magistrate held Cruz to answer on counts 1 and 2, but dismissed counts 3 and 4 pursuant to Penal Code section 1385.[4]  Appellant maintains she never possessed cocaine with intent to sell.  Appellant told Montoya that appellant believes she made a terrible mistake by pleading no contest to a violation of Health and Safety Code section 11351 and she wanted to withdraw her plea.  Appellant was prepared to plead guilty to possessing cocaine in violation of Health and Safety Code section 11350, subdivision (a) and to receive deferred entry of judgment.[5]

f. *The October 13, 2011 Hearing on the Motion.*

At the October 13, 2011 hearing on appellant's motion, Montoya represented that he had provided to the court and prosecutor materials that appellant had mailed to Montoya on July 27, 2011.  Montoya stated that "in addition to the written motion and those materials," appellant wanted to address the court personally.

The court stated (and we italicize its comments that we discuss later), "Well, before she does, let me just indicate that *I understand the basis for the motion.  But it's a motion to withdraw a plea, which is very specific on the legal grounds that I can use to validate and grant any of that motion.*  [¶]  And in this particular case, it's pretty clear from the record that this was a knowing waiver, that the defendant was advised of her constitutional rights and the consequences.  And it was basically a plea entered because it was felt it would be in the best interests based on everything that was going on at the time of the plea.  And because of that, I don't have any legal basis to permit the withdrawal of

---

[4]     Minute orders attached to the motion confirm the above facts.

[5]     Appellant's written motion stated it was based on the declaration of Montoya and attached exhibits.  The written motion was not supported by a declaration from appellant, did not expressly refer to the June 26, 2011 letter or the July 27, 2011 letter, and does not demonstrate either of those letters was attached as an exhibit.  The motion stated it was based on various state and federal constitutional provisions but was otherwise unsupported by points and authorities and made no reference to Penal Code section 1018, its good cause requirement, or what a good cause showing required.  On August 9, 2011, the People filed an opposition that set forth case law applicable to motions to withdraw pleas pursuant to Penal Code section 1018.

the plea. [¶] I know there are equitable issues involved, and that's why I suggested that the parties meet and confer and see if they could arrive at some equitable disposition, short of my withdrawing this plea based on this motion. Because based on the motion, I have no legal grounds [on] which to base a granting of the motion." (Italics added.)

The court then stated, "I know that it would appear from the way the evidence came out at the preliminary hearing that it may not be a possession-for-sale case, but that is after the fact. I can only deal in this motion with the date the plea was entered, the advisements given, and the responses of the defendant. [¶] So I don't mind if she says something. But, [appellant], there's not much I can do legally to withdraw the plea. That's why I suggested the District Attorney's office and the Public Defender's office get together to see if they could work something out. It looks like they haven't. So if you want to say something, you may."

Appellant, personally addressing the court, said, "I made a lot of mistakes this year. And accepting a plea for a crime that I never committed . . . in my life. I've never sold, dealt drugs – it was just the way it went down that day. It was bad circumstances. [¶] I never had any intention to accept the plea from day one. Mr. Stanford was my Public Defender. He made me aware of the plea that you had offered me. And I said, no, I was not going to accept a plea for a crime I did not commit. [¶] It was only my time with Ms. Muse, the Public Defender, that I decided to accept it. [*Sic*.] And it was because she told me to. She told me if she were in my place, she would take the bird in the hand and take the deal."

Appellant indicated Cruz sent his bodyguard to appellant to try to talk with her, the bodyguard had the audacity to sit next to appellant in the courthouse, and the bodyguard was "calling [appellant's] name outside." Appellant stated, "I find it wasn't intelligently or without at least some coercion as far as intimidation, and to say the least, fragmented time with counsel." (*Sic.*)

The court later said, "I understand that. And I understand the dynamics of the situation because I then heard the preliminary hearing of [Cruz]. And I could see where,

in the big picture, you could argue a different result than what happened. [¶] But this is a motion to withdraw a plea. And the only requirements on the entry of the plea are that you are advised of your constitutional rights, you know what they are, you waive them, you are advised of the consequences of your plea, and you know what they are. And those things were done. [¶] Defendants can negotiate pleas that they feel are in their best interests, and that seems to be what happened at this point. So I have to, based on the law, deny the motion to withdraw plea."

Appellant later indicated she was "willing to serve jail time for possession." The court replied, "I just don't have a basis for doing it. I can't grant motions on which there is no legal basis, as much as I want to. [¶] I believe a better disposition in this for you may have been a possession case. But we're past that. We're past the negotiation of what the charge should be and what you should plead to because a plea has been entered. [¶] Now all I can deal with is the day the plea was entered, what took place at the time of the plea, because I'm ruling on the motion to withdraw that plea. That's all I can rule on. [¶] *I can't decide that motion based on what happened at the preliminary hearing or what you're telling me now. I can only base it on what happened at the time of the plea.* So I don't have any legal basis to allow you to withdraw your plea; so I can't. And I'm going to deny that motion."[6] (Italics added.)

2. *Analysis.*

Appellant claims that "[b]y failing to understand the scope of its discretion [under Penal Code section 1018], the court abused its discretion" when denying appellant's motion. Appellant's claim actually implicates two discrete issues, i.e., (1) whether the trial court was unaware of the scope of its discretion under Penal Code section 1018 with the result the trial court erroneously failed to exercise its informed

---

[6] The court "for equity's sake" deleted the PAAWS probation condition. The following later occurred: "[The Court:] You've been on probation since July. So in 18 months, I would consider terminating probation. Then she can withdraw her plea and have a not guilty plea entered. [¶] [Montoya]: Thank you, your Honor. [¶] [Appellant]: Thank you."

discretion when denying the motion (see *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8; *People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1247-1248) and (2) whether the trial court abused its discretion by denying the motion.

a. *Applicable Law.*

A plea of guilty "is the most serious step a defendant can take in a criminal prosecution." (*People v. Chadd* (1981) 28 Cal.3d 739, 748.) The plea is deemed to constitute a judicial admission of every element of the offense charged, serves as a stipulation the People need introduce no proof whatever to support the accusation, supplies both evidence and verdict, and is itself a conviction. (*Ibid.*) The same is true of a no contest plea.

Penal Code section 1018 provides that on application of a defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may, for good cause shown, permit a plea of guilty to be withdrawn. The burden of proof is clear and convincing evidence of good cause. The plea may be withdrawn for mistake, ignorance, inadvertence, or any other factor overreaching a defendant's free and clear judgment. (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456; *People v. Waters* (1975) 52 Cal.App.3d 323, 328.) The requirement that a defendant make a convincing showing of good cause has been said to "codify the rule that leave to withdraw a guilty plea with its resulting inconvenience and expense should not be lightly granted. [Citation.]" (*Waters*, at p. 331.)

"Although the section is to be liberally construed, 'the withdrawal of such a plea rests in the sound discretion of the trial court and a denial may not be disturbed unless the trial court has abused its discretion.' [Citation.]" (*In re Brown* (1973) 9 Cal.3d 679, 685.)

9

b. *Application of the Law to This Case.*

(1) *The Trial Court Did Not Fail to Exercise Its Informed Discretion When Denying Appellant's Motion.*

As to the first issue, whether the court was aware of its discretion under Penal Code section 1018, appellant argues, "Here, the court seemed to think that it could grant the motion only if the plea itself was invalid: 'I can't decide that motion based on what happened at the preliminary hearing or what you are telling me now. I can only base it on what happened at the time of the plea.'" We reject the argument.

There is no dispute that prior to appellant's no contest plea, she was advised of the nature and consequences of her plea, waived her constitutional rights, stated no one had threatened her to get her to plead, and stated she was pleading freely and voluntarily. There is thus no dispute that based on the record of the taking of the plea, appellant's no contest plea was valid.

Although a Penal Code section 1018 motion is made after such a plea, the motion raises the issue of whether a factor(s) (e.g., mistake, ignorance, etc.) overreached the defendant's free and clear judgment *at the time of the plea*.

Appellant construes the trial court's statement "I can only base it on what happened at the time of the plea" as meaning "I can only base it on whether the plea was valid." Appellant in turn suggests the trial court erroneously believed it could decide appellant's motion based only on such factors as whether appellant waived her constitutional rights prior to her no contest plea, and not on whether, under Penal Code section 1018, a factor(s) overreached her free and clear judgment at the time of the plea.

However, first, the trial court is presumed to have known and applied the correct statutory and case law. (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032; Evid. Code, § 664.) The trial court is therefore presumed to have known and applied Penal Code section 1018 and its related case law indicating the pertinent inquiry was whether a factor(s) overreached appellant's free and clear judgment.

10

Second, during the trial court's *initial* comments at the October 13, 2011 hearing, the court stated, ". . . I understand the *basis* for the motion. *But* it's a motion to withdraw a plea, which is *very specific on the legal grounds* that I can use to validate and *grant* any of that motion." (Italics added.)

Fairly construed in light of the above mentioned presumption, the trial court's statement distinguished the basis on which appellant was *asking* the court to grant the motion from the specific legal grounds—i.e., *those set forth in Penal Code section 1018 and case law interpreting it*—which the court could use to *grant* such a motion. The record thus adequately demonstrates the trial court's awareness of Penal Code section 1018 and case law describing the legal grounds on the basis of which the trial court was authorized to exercise its discretion and grant a motion made pursuant to that section.

Third, it was only later that the court stated, "I can only base it [i.e., the court's decision on appellant's motion] on what happened at the time of the plea." However, that statement was consistent with the court deciding, pursuant to Penal Code section 1018, whether appellant exercised *free and clear judgment* at the time of the plea.

Fourth, although the trial court stated, "I can't decide that motion based on what happened at the preliminary hearing," that statement must be viewed in light of the trial court's additional comment to the effect the evidence at Cruz's preliminary hearing suggested "it may not be a possession-for-sale case." That is, the trial court's first statement, reasonably understood, properly indicated the trial court could not consider any deficiency in the evidence at Cruz's preliminary hearing as a factor impacting appellant's earlier no contest plea which constituted a conclusive judicial admission of guilt.

Fifth, before the court stated, "I can't decide that motion based on . . . what you're telling me now," the only things appellant personally had told the court were, in essence, she had made mistakes, she was factually innocent, she decided to plead no contest based on Muse's advice, Cruz's bodyguard intimidated appellant, and appellant spent insufficient time with Muse. However, the fact appellant had made mistakes and her

11

profession of innocence were irrelevant given her conclusive no contest plea. The fact appellant, with knowledge of the facts, pled no contest on advice of counsel *supported* the denial of appellant's motion. (Cf. *People v. Hightower* (1990) 224 Cal.App.3d 923, 928.)

As for the remaining factors (alleged intimidation and insufficient time with Muse) the trial court's statement reasonably may be construed as indicating that they did not justify granting appellant's motion in light of the evidence that, with knowledge of any such factors, she pled no contest pursuant to "*People v. West*," i.e., because it was beneficial for her to do so.

Notwithstanding appellant's assertions to the contrary, the record fails to demonstrate the trial court was unwilling to explore or consider any factor that might have impacted appellant's free judgment at the time of the plea. We note in this regard the court ordered appellant to file her motion in writing, asked Montoya on October 13, 2011, if he wanted to be heard concerning the motion, and, after hearing from Montoya, permitted appellant personally to address the court. The trial court was willing to consider (and did consider) arguments at the hearing on appellant's motion, and the trial court's comments, reasonably construed, indicate that it was unwilling to consider such arguments as *relevant* unless they pertained to the issue of whether a factor(s) overreached appellant's free and clear judgment at the time of the plea. The court effectively concluded appellant pled no contest because it was in her "best interests based on everything that was going on at the time of the plea" and appellant had failed to show the requisite good cause.

Appellant has failed to demonstrate that when the trial court denied her motion, the trial court erroneously failed to exercise its discretion because it was unaware of the scope of its discretion under Penal Code section 1018. Instead, the trial court understood and exercised its discretion under that section, denying appellant's motion.

12

(2) *The Trial Court Did Not Abuse Its Discretion by Denying Appellant's Motion.*

As to the second issue, whether the trial court abused its discretion by denying appellant's motion, we note the following. Appellant wrote a letter to Montoya dated June 26, 2011. The letter indicated the drugs in her apartment were not hers and she never intended to sell drugs. However, the letter never mentioned Cruz or any efforts by him to intimidate appellant.

The record of the July 15, 2011 proceedings leading to appellant's no contest plea on that date reflects she freely and voluntarily pled no contest because it was beneficial for her to do so. That record gives no hint of any ground for a contrary conclusion or any hint of the issues she later raised in her motion or in her letters.

Appellant's July 27, 2011 letter indicated Cruz intimidated appellant and, "throughout the incident," Cruz told her to keep quiet. However, appellant made no mention of these alleged facts in the June 26, 2011 letter, or on July 15, 2011 when she pled no contest after explicitly telling the court she was pleading freely and voluntarily. The trial court reasonably could have concluded there was insufficient evidence of intimidation. Moreover, appellant fails to explain how Cruz's alleged intimidating efforts to have her keep quiet induced her to do exactly the opposite—plead no contest. The July 27, 2011 letter reflects that on July 15, 2011, appellant "decid[ed] to take the plea offer" and, despite the fact she previously had maintained her innocence, appellant "changed [her] position" when Muse represented appellant.

Appellant indicated in the July 27, 2011 letter that she would not "stamp [herself] guilty of a crime that [she had] never committed." However, her credibility on that issue was weakened by the facts she claimed in the June 26, 2011 letter that the drugs were not hers but subsequently reiterated her willingness to plead guilty to possession of cocaine (although appellant suggested she thought she was liable for that crime simply because the drugs were in her apartment).

13

Montoya filed appellant's motion on August 2, 2011, and the motion was not supported by a declaration from appellant. Neither the June 26, 2011 letter nor the July 27, 2011 letter was sworn. Montoya was aware of those letters and any other materials she allegedly mailed to him. However, Montoya, acting as appellant's counsel, apparently elected not to refer expressly in the motion to any of the above letters or materials and apparently did not attach them as exhibits.

Instead, the written motion asserted only three grounds for withdrawal of appellant's no contest plea: (1) the preliminary hearing disposition of the charges against Cruz, (2) appellant's profession of innocence as to the present charge, and (3) her claim she made a terrible mistake by pleading no contest to that charge. However, simply put, neither these grounds, information presented to the trial court in connection with appellant's motion, nor appellant's apparent buyer's remorse after learning the magistrate dismissed certain counts against Cruz, constituted good cause for granting appellant's motion. The trial court did not abuse its discretion by denying appellant's motion to withdraw her plea of no contest to possessing a controlled substance for sale.

### *DISPOSITION*

The judgment (order granting probation) is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.                                ALDRICH, J.

14